No. 18,555.

POLICE PENSION AND RELIEF BOARD OF THE CITY AND COUNTY OF DENVER, ET AL. *v.* PAUL O. McPHAIL, WILLIAM E. FLOR, ET AL.
(338 P. [2d] 694)

Decided May 4, 1959.

Mr. JOHN C. BANKS, Mr. W. KEITH PETERSON, for plaintiffs in error.

Messrs. DONALDSON, HOFFMAN & GOLDSTEIN, for defendants in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

Plaintiffs in error were defendants in the district court and will be referred to herein as defendants. They are the members of the Police Pension and Relief Board (of Denver); also named is Thomas G. Currigan, Auditor of the City and County of Denver. The defendants in error were the plaintiffs below and are representatives of a class consisting of all of those retired members of the Police Department of Denver who have served 25 years or more and have satisfied the other requirements of the pension system prior to April 1, 1956, the effective date of the Charter Amendment which would change their status.

The question presented is the validity of the provision of an amendment to the Charter of the City and County of Denver which increased the salaries of the Police Department and the Fire Department and at the same time repealed a provision which had been in force since 1919 which geared pension increases to salary increases of members of the department.

The action seeks a declaratory judgment that the 1956 Charter Amendment which eliminated the automatic increase in the amount of the pension is invalid and void, together with an award of arrearage computed in accordance with the increase. Various grounds are set forth in the complaint and in the briefs in support of the contention that this section is unlawful, unenforcible as to plaintiffs and is separable from the remainder of the Charter Amendment.

The measure was submitted to the electors of the City and County of Denver by the City Council pursuant to Ordinance No. 34, Series of 1956, "A proposal for the Amendment of Section 319 of the Charter of the City and County of Denver Concerning the Police Department and Fire Department, the Authorized Positions and Qualifications, Salaries, Duties and Retirement Rights and Benefits of the Members and Former Mem-

bers Thereof." It was approved at the election held March 20, 1956.

Sub-Section 10, the controversial provision, changes the 1947 Amendment as follows:

"(10) Members of the Classified Service of the Police Department who have retired prior to the effective date of this amendment shall not have added to their pension benefits or allotments one-half of any increases in pay granted by this amendment for the ranks which they held at the time of retirement, whether such increases are granted by paragraph (3) or by paragraph (9) of this Section 1.

"Further, on and after April 1, 1956, Section 133 of the Charter of the City and County of Denver (1953 Compilation) shall be and the same is hereby amended by repeal and deletion of that portion of said Section which reads as follows:

" 'In the event that salaries in the Denver Police Department shall be raised after the effective date of this amendment and those members of said department who shall have previously been retired from active service and who are receiving a pension shall be entitled to an increase in the amount of their pension equal to one-half of the raise in pay granted in the rank said member held at the time he was retired.'

"Provided that, nothing herein shall be construed or considered as affecting the right of any retired member or any dependent of any deceased retired member to continue to receive the amount of pension benefit or allotments due or being paid to any such persons as of March 31, 1956, without reduction thereof."

The escalation principle which was repealed in the 1956 Charter Amendment has a long history. It was not contained in the original charter provision creating the Police Pension Relief Fund adopted in the year 1906 (Charter Section 133, Denver Municipal Code 1917, p. 87). This provision authorized the City Council to provide a Police Department Relief Fund administered by

the Board of Fire and Police. Pursuant to this authorization the Denver City Council adopted legislation which fixed the pension on a percentage basis. Section 1648 of this act provided:

" * * * there shall be paid monthly from said fund to the applicant an amount equal to one-half the average monthly salary he received during the year next before the time of filing said application." Municipal Code 1917, p. 734.

Section 1645 of this same legislation created the fund from which pensions were to be paid and provided *inter alia:*

" * * * A monthly assessment of one per cent. upon the monthly salary of such officer, member or employe, to be deducted and withheld therefrom." Municipal Code 1917, Sec. 1651.

The charter provision continued in the same form, but legislation was adopted in 1919 which incorporated the escalation provision now in question. Section 1577 of the Municipal Code of 1927 provided:

" * * * there shall be paid monthly from said fund to the applicant, an amount equal to one-half the average monthly salary *now being paid or hereafter to be paid* for the same class of service which the retired member was performing during one year next before the time of filing such application. * * * " (Emphasis supplied.)

In the year 1946 Section 133 of the Charter was amended to authorize optional retirement following 25 years of service. This continued the escalation method:

" * * * and such member shall thereafter, during his life-time, be paid in equal monthly installments from the 'pension and relief fund' a pension equal to one-half ($\frac{1}{2}$) of the average monthly rate of salary which such member shall have received in such department during the one year preceding the date of the termination of the said member's twenty-five years of active service."

" * * * In the event that salaries in the Denver police department shall be raised after the effective date of this

amendment those members of said department who shall have previously been retired from active service and who are receiving a pension shall be entitled to an increase in the amount of their pension equal to one-half of the raise in pay granted in the rank said member held at the time he was retired." Revised Municipal Code of the City and County of Denver, Charter pp. 45 and 46.

Thus, each of the plaintiffs served and elected to retire pursuant to the escalation principle.

The only question which needs to be considered arises from the contention that the City of Denver and the Police Pension Board is estopped to assert and enforce the new amendment against the plaintiffs who lived and worked under and whose rights accrued pursuant to the escalation clause. On this point plaintiffs have argued that the escalation clause was a promise held out to members of the department; that it induced them to retire by promising that they would be protected against the inflationary spiral; that plaintiffs changed their positions in reliance on the continuation of this formula and that grave injustice would result from destruction of these expectations. Defendants argue that the estoppel doctrine is not applicable because there was no basis for these expectations — that the gift or gratuity concept of pensions has been long recognized in Colorado and consequently the escalation clause was always subject to legislative change; that no vested rights have accrued under the 1947 amendment to Charter Section 133.

It is important to note that the pension system which is here involved is a so-called contributory system. Section 133 of the Charter creates the Police Pension and Relief Fund from which the police pensions are paid. Various monies are paid into this fund, including fines imposed against members of the Police Department for violations of rules, donations and gifts and annual appropriations from the City Council. In addition, each member of the Police Department contributes $3\frac{1}{2}\%$ of his salary. The wording of the sub-section is:

"3. Each and every member of the Denver police department in the classified service shall contribute 3½% of his salary or of his compensation when on disability leave."

It is also noteworthy that the system has been a contributory one through the years although the percentage of the contribution was less prior to 1946. It is by reason of this contributory aspect and the fact that the plaintiffs have completed their service and have acquired their pension status prior to the adoption of the amendment, that they maintain the repeal violates Article II, Section 11 of the Constitution of Colorado which protects vested contract rights from impairment.

Defendants argue that the Court is committed to the gift or gratuity rule and they cite *Bedford v. White,* 106 Colo. 439, 106 P. (2d) 469; *Board of Trustees v. People ex rel. Behrman,* 119 Colo. 301, 203 P. (2d) 490, and *Board of Trustees v. Koman,* 133 Colo. 598, 298 P. (2d) 737. This is unquestionably true, but is the "gift" concept an adequate basis or explanation in a fact setting like the present one? The pension in *Bedford v. White,* supra, was correctly described as a gift or gratuity since it involved an effort by two former Judges of this Court to recover pension payments allegedly due them under an enactment which had become law *after* their retirement. It was properly held that the General Assembly could validly enact a measure of this nature to compensate for past service but that when it did so the "pension" was not contractual but was a gift. It was there said:

" ' * * * No man has a legal vested right to a pension; it is a mere bounty or gratuity given by the government in consideration or recognition of meritorious past services, or of loss or damage sustained in the public service and "springing from the appreciation and graciousness of the sovereign." It may be bestowed upon such persons and upon such terms as the law making body of the government prescribes. And "its payment must be made

and accepted in exact conformity with the terms of the grant, and must be subject to all the limitations, conditions and exceptions therein contained." It is, at most, an expectancy granted by the law. And although existing pension laws may entitle one to a pension, the government may, at its pleasure, at any time, change the amount thereof or revoke or destroy it altogether.' 48 C.J. 786, §2.

"Again it is to be observed that members of the judiciary have been pensioned under Anglo Saxon jurisprudence since the close of the eighteenth century. Pensions have been paid to our federal judges since 1869, and legislation authorizing pensions to state judges has been passed in nearly half of the states of the Union.

"Judge Cooley says that liberal provisions may be made for men 'who have performed' meritorious public services in the army and navy and that 'The same may be said of a like recognition of valuable public services rendered by other persons: The question in every case is not one of power, but of prudence and public policy.' 1 Cooley on Taxation (3 ed.) pp. 189-190."

While the above general statements were applicable to the retrospective gift situation there presented they have no pertinence in the instant case. Here the contract was set forth in the basic law and the rights were acquired following 25 years of faithful service during which time the plaintiffs paid an actual and regular consideration. It is impossible, therefore, to relate the ruling of the *Bedford case* to the present controversy and that decision is therefore distinguishable.

But in *Board of Trustees v. Behrman,* supra, a lucid exposition of the gratuity viewpoint, the *Bedford v. White rule* was applied to a contract fact situation. In question was the validity of a legislative act passed in 1945 (after Behrman had been retired for disability) which authorized the pension board to reduce the amount of the annuity as it appeared that the retired person was able to perform other work. It was there al-

leged that the provision was invalid because it impaired the obligation of an existing contract and the Court rejected this contention.               . . .

. "It is argued by counsel for Behrman that, because he contributes a percentage of his salary to the Fireman's Pension Fund, he has acquired a contractual right to a pension and a vested right in the amount which he was entitled to draw at the time he went on the pension roll. We have held, however, in *People ex rel. Albright v. Board of Trustees,* 103 Colo. 1, 82 P. (2d) 765, 118 A.L.R. 984, *that the deduction made from his salary as a contribution to the fund has never come within his control and is regarded as belonging to the employer or the trustees of the fund,* and so if he terminates his employment prior to becoming eligible for a pension, or if he is discharged for cause, he is eligible neither for a pension nor for a return of the amounts which had been deducted from his salary." 119 Colo. 304. (Emphasis supplied.)

And said further:

"From the principle laid down in the foregoing authorities it follows that a legislative change in the amount of the pension is not an impairment of the obligation of contracts in violation of article II, section 11, of the Colorado Constitution."

■ The faulty premise in the *Behrman* and in the *Albright* decision cited therein is the conclusion that deductions from the salary of the member are not his property. Is actual possession of the money withheld a proper test? We conclude that it is not. Because funds are withheld from one's salary and he is denied the pleasure of physical possession does not mean that the money deducted is not his property or does not constitute an actual consideration paid into the fund. Income taxes are paid by the member on the full amount of his salary and no deduction is allowed for the amount of his contribution to the pension fund, and there is other evidence that these monies are *his* property. For ex-

ample, the fireman and policeman accepts less take home pay in order to provide a generous retirement system. The benefits thus provided are definitely a part and an important part of his compensation. Merely because the deductions are compulsory, as are deductions for income tax, and do not come into the members' actual possession, it does not follow that he has not earned the money or that it is not part of his compensation. Cf. *Clarke v. Ireland*, 122 Mont. 191, 199 P. (2d) 965.

Cited and relied upon by the Court in the *Behrman* case are *Pennie v. Reis,* 132 U.S. 464, 33 L. Ed. 426, 10 S. Ct. 149; *Donovan v. Retirement Board,* 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; *Dodge v. Board of Education,* 364 Ill. 547, 5 N.E. (2d) 84; *Talbot v. Independent School Dist.,* 230 Ia. 949, 299 N.W. 556, 137 A.L.R. 234; McQuillan on Municipal Corporations (2d ed.), volume 6, section 2582, and many other similar decisions.

*Albright v. Board of Trustees,* 103 Colo. 1, 82 P. (2d) 765, held that widows of deceased firemen were entitled to receive an increase provided by a new amendment and in the course of the opinion the Court noted that the pension is a mere gratuity. That opinion also cited with approval some of the cases which were later approved in the *Behrman case,* supra, including *Pennie v. Reis,* and its holding that compulsory assessments are merely a reduction in salary of the member and are not his property — that the fund is composed of public funds and is thus subject to legislative modification or abolition. Once the "reduction of salary" premise is rejected the relationship between the City and the member acquires the character of a contract.

*Board of Trustees v. Koman,* 133 Colo. 598, 298 P. (2d) 737, did not turn on the issue whether a pension is a gift or a gratuity, but rather on whether one who had resigned from the police department thus waived his rights to claim a disability pension, hence is not pertinent to this controversy. The idea that a pension (sometimes called a retirement) has the attributes of a contract and

is therefore entitled to constitutional protection has gained favor in a growing number of jurisdictions. Many of the cases are noted and collected in 137 A.L.R. 237, 249, 52 A.L.R. (2d) 435.

The author of the note in 52 A.L.R. (2d) points out that there are several facets of the contract or vested rights pension concept.

1. As to *non-contributory* systems, only one jurisdiction, California, is said to apply the doctrine.

2. Under *contributory* systems (such as the system at bar) the vested right idea has more logic and consequently much broader recognition.

a. A growing number of courts now hold that pension rights are immune from abolition or adverse change once the conditions or requirements for grant of the pension are fulfilled. This applies in Georgia, Indiana, Iowa, Kentucky, North Dakota, Ohio and Wisconsin.

b. In at least two states, Washington and California, it is held that limited vesting of pension rights occurs following the rendition of service and prior to completion of the prescribed time. One Pennsylvania case also indicates adherence to this viewpoint. All of these states, of course, hold that there is vesting following complete rendition of service.

c. Some states hold that pension rights (contributory) may be changed but can not be abolished. The California Supreme Court has ruled that there can be modifications, but has held that a detrimental change must be offset by one which is beneficial. 52 A.L.R. (2d) 437, 441, 442. In Florida, Louisiana, Nebraska, North Carolina, Oklahoma and South Dakota it is held that the pensioner has a vested right but that some change in the system is permissible.

*Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 Atl. (2d) 233, 52 A.L.R. (2d) 430, comments on the gift or bounty conception of pensions as against vested contract rights. The case arose in connection with a pen-

sioner who had completed his years of service and had accepted a job with another governmental unit. The Legislature passed a statute after the completion of his years of service which prohibited the payment of a pension to an individual in public service. The Pennsylvania Court discussed the fallacy of the gift idea and said:

" * * * The concept of pensions has come down through the centuries wearing a cloak of monarchial dispensation. Kings conferred pensions on court favorites, artists and military heroes with a flourish which proclaimed that the royal treasury was as inexhaustible as the crown's power was unlimited. However, despite ceremony and pronunciamento, the pensioner obtained no vested right to the proclaimed pension. In fact, he could not be any more assured of a continuation of the pension than he could be assured that his head would remain on his shoulders if he should displease his absolutist benefactor. But the pension of today is not a grant of the Republic nor in this case is it a gift of the City Fathers. It is the product of mutual promises between the pensioning authority and the pensioner; it is the result of contributions into a fund which exists for the single purpose of pensions. Adhering to the theory that pensioners are in the nature of glorified petitioners for public largesse, the appellees call to our attention general statements in the law books which undoubtedly originated in the era of imperial and kingly sway."

On the question of vested rights the Court said:

" * * * The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past. According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship. Ex post facto legislation is abhorred in criminal law because it stigmatizes with

criminality an act entirely innocent when committed. The impairment of contractual obligations by the Legislature is equally abhorrent because such impairment changes the blueprint of a bridge construction when the spans are half way across the stream."

In an earlier decision of the Supreme Court of Pennsylvania, that of *Baker v. Retirement Board,* 374 Pa. 165, 97 Atl. (2d) 231, the Court went beyond the decision in the *Hickey case,* supra, and held that the rights vested as of the date that the employee entered the service. This type of case is to be distinguished from the case at bar and this decision should not be interpreted to mean approval of such a rule.

*Retirement Board v. McGovern* (1934), 316 Pa. 161, 174 Atl. 400, is a definitive decision in Pennsylvania on the question of vesting of rights following acquisition of pension or retirement status. The language of the Court is applicable to the conditions which are here present:

" * * * Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions and regulations imposed on the receipt of retirement pay.

"Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived; it has ripened into a full contractual obligation. See Lynch v. U.S., 54 S. Ct. 840, 78 L. Ed. 1434, decided June 4, 1934. True, section 312 of the Act of 1929 (16 PS §312) calls this system a 'pension system' and the fund a 'pension fund,' but in every part of the statute the system and fund created are of the character

above described, and the nomenclature has been changed to 'retirement system' and 'retirement fund' by the Act of May 22, 1933, P. L. 840 (16 PS §312)." *174 Atl. 404.*

■ The case of *McBride v. Retirement Board,* 330 Pa. 402, 199 Atl. 130, follows the *McGovern case* and expresses the same viewpoint. This opinion indicates that changes may be made in the pension system looking to strengthening and bettering it and it may be conceded that this is permissible. In other words, it is not desirable to tie the hands of the Legislature forever after the enactment, but even though it is to be conceded that change is permissible, it does not follow that a basic and fundamental change which deprives members of a valuable right as in the case at bar is valid, it not being feasible to lay down any rules or principles as to what changes can or cannot be made.

There are numerous cases in California dealing with almost the exact problem here presented and holding that a change from an escalator clause to a fixed amount can have no retrospective effect. See, for example, *Terry v. Berkeley,* 41 Cal. (2d) 698, 263 P. (2d) 833; *Eichelberger v. Berkeley,* 46 Cal. (2d) 182, 293 P. (2d) 1; *Allen v. Long Beach,* 45 Cal. (2d) 128, 287 P. (2d) 765, and *Abney v. City of Los Angeles,* 50 Cal. (2d) 438, 326 P. (2d) 484. Supporting authorities from jurisdictions other than California and Pennsylvania include the following: *Bender v. Anglin,* 207 Ga. 108, 60 S.E. (2d) 756; *Klamm v. State* (1955), 235 Ind. 289, 126 N.E. (2d) 487; *Lamb v. Boone* (1946), 237 Ia. 273, 21 N.W. (2d) 462. Cf. *Talbot v. Independent School District* (1941), 230 Ia. 949, 299 N.W. 556, 137 A.L.R. 234; *Board of Education v. Louisville* (1941), 288 Ky. 656, 157 S.W. (2d) 337; *Payne v. Board* (1949), 76 N.D. 278, 35 N.W. (2d) 553; *McLean v. Retirement Board* (1954), 161 Ohio St. 327, 119 N.E. (2d) 70; *Bakenhus v. City of Seattle* (1956), 48 Wash. (2d) 695, 296 P. (2d) 536; *Driggs v. Utah Retirement Board* (1943), 105 Utah 417, 142 P. (2d) 657; *Tait v. Freeman* (1953), 74 S.D. 620, 57 N.W. (2d) 520; *Anders*

*v. Nicholson* (1933), 111 Fla. 849, 150 So. 639. See also *Dillon v. Wentz* (1947), 227 N.C. 117, 41 S.E. 202.

In New York the entire question was settled by constitutional amendment providing that membership in a pension system constitutes a contractual relationship which cannot be diminished or repealed by legislative act. This would seem to be a partial codification of court of appeals decisions and an enactment of the Assembly which had declared that upon retirement the right of an employee became vested.

■ Although the above analysis would indicate that the contract principle is a minority viewpoint, we believe that in a case, such as that before us, involving a contributory system it is the only reasonable conclusion that can be reached. A relationship such as that presented cannot be correctly described as a gift. The plaintiffs were employed under a written contract the terms of which were set forth in the Charter and Ordinance of the City and County of Denver, which specifically provided that if plaintiffs fulfilled all conditions they would receive a pension which would be subject to increase or decrease based upon the salary of the rank which they occupied as of the date of retirement. It would be unjust and contrary to our basic notions concerning the validity of contracts to hold that this provision could be changed by the lawmakers. We conclude that Article II, Section 11 of the Colorado Constitution applies to the status of the plaintiffs here and prevents enforcement of Sub-Section 10 of Section 1 of the 1956 Amendment against them.

Although the facts of *Board of Trustees v. People ex rel. Behrman,* 119 Colo. 301, 203 P. (2d) 490, are unlike the facts of the case at bar, yet insofar as that case holds that a contributory pension such as the one at bar is a gift or gratuity, even after fulfillment of conditions precedent, it is expressly overruled.

Concluding, as we do, that the repealing provisions of

Sub-Section 10 are ineffective to impair the vested rights of the plaintiffs, the judgment of the trial court is affirmed.

MR. JUSTICE DAY concurs in the result.

MR. JUSTICE SUTTON not participating.