Patricia Dyer PETERSON and Constance Preble, Petitioners,

v.

FIRE AND POLICE PENSION ASSOCI-ATION, Police Pension Relief Board, Mike Licht, Auditor, and the City and County of Denver, Respondents.

No. 86SC266.

Supreme Court of Colorado, En Banc.

July 18, 1988.

As Modified on Denial of Rehearing Aug. 22, 1988.

Brauer & Buescher, P.C., Thomas E. Buescher, Ellen M. Kelman, Denver, for petitioners.

Tallmadge, Tallmadge, Wallace & Hahn, P.C., C. Thomas Bastien, Denver, for respondent Fire and Police Pension Assn.

Stephen H. Kaplan, City Atty., Darlene M. Ebert, Asst. City Atty., Denver, for respondents Police Pension Relief Bd., Mike Licht, Auditor, and the City and County of Denver.

ERICKSON, Justice.

Petitioners Patricia Peterson and Constance Preble commenced this declaratory judgment action against the Fire and Police Pension Association (Association), the Police Pension and Relief Board (Board), the City and County of Denver, and Mike Licht, Auditor, to obtain a judgment entitling them to survivor benefits under sections 31–30–1001 to –1016, 12 C.R.S. (1985 Supp.) (state plan), and under section C5.42 of the Denver City Charter (1982) (city plan).[1] Alternatively, they sought a declaration that the state plan is unconstitutional as applied to them, and as such, does not preempt their benefits under the Denver Charter. The court of appeals, 725 P.2d 81 (1986), affirmed the trial court's holding that the petitioners are not entitled to benefits under both the state plan and city plan, and that the state plan is constitutional as applied to them, thereby entitling petitioners to benefits only under the state plan. We granted certiorari on two issues: (1) whether the trial court erred in holding that the amount of survivor benefits payable to a surviving spouse could be changed during an officer's life because rights to those benefits do not fully vest until death; and (2) whether the trial court erred in holding that partially vested rights in survivor benefits can be reduced because corresponding changes of a beneficial nature were made. We now affirm the court of appeals decision as to all issues except the issue of standing, which we reverse.

**1.** Peterson filed the complaint in March 1980; Preble was added as a plaintiff prior to trial in June 1983.

**2.** Section C5.42 of the Denver Charter provides:
**Dependents.** Upon the death of any member or retired member of the Police Department, the surviving spouse shall be entitled to receive monthly benefits from the "Pension and Relief Fund" equal to one-third (⅓) of the salary then or thereafter paid to active members of the Department for services in the rank held by such member or retired member at the time of his or her death or retirement, and an allowance of Fifty Dollars ($50.00) per month for each dependent child of such member or retired member under the age of nineteen (19) years. Said benefits for said surviv-, ing spouse personally shall be terminated upon his or her death or remarriage, and said allowance for any such dependent child shall

I.

The petitioners are surviving spouses of Denver police officers who died while still employed by the city, after the effective date of the state plan, sections 31–30–1001 to –1016, 12 C.R.S. (1985 Supp.). Officer Albert Peterson joined the Denver Police Department on May 1, 1961, and died on January 5, 1980, having served the department for almost nineteen years. Officer Robert Preble had served the department for just over twenty-four years. He joined the department on February 1, 1957, and died on February 21, 1981. At the time petitioners' husbands were hired by the city, section C5.42 of the Denver City Charter (1982) provided for benefits in the amount of one-third of the officer's salary, based on rank at the time of death or retirement, to be paid to the surviving spouse of an officer who died while in active service. Additional benefits were awarded based on the number of dependent children.[2] The General Assembly, however, enacted Senate Bill 79 as sections 31–30–1001 to –1016. *See* ch. 316, sec. 1, §§ 31–30–1001 to –1016, 1979 Colo.Sess. Laws 1189–1203. Section 31–30–1008 provides for survivor benefits to the surviving spouse and dependents of police officers and fire fighters. The state plan became effective on January 1, 1980. When petitioners' husbands died, the state plan provided for payment of twenty-five percent of the base monthly salary that they were

terminate when he or she shall reach the age of nineteen (19) years. Should said deceased member or retired member leave no spouse surviving him or her, but leave surviving a dependent child or dependent children under the age of nineteen (19) years, or a spouse who shall thereafter die or remarry, then the surviving spouse's benefits herein provided, plus the additional allowances for each dependent child under the age of nineteen (19) years shall be apportioned equally among the dependent children under the age of nineteen (19) years.
The provisions of this section shall not be retroactive but shall extend to and for the benefit of any presently surviving spouse or child or a member, already deceased, who otherwise fulfills the requirements of the section.

receiving immediately prior to death. Additional benefits were awarded based upon the number of dependents. The state did not provide for increases in benefits commensurate with salary plan increases of officers of the same rank. Petitioners were granted the benefits under the state plan but denied benefits under the city plan. Petitioner Peterson had been receiving $435.50 per month under the state plan until she remarried in November 1982. Under the city plan she would have been entitled to receive $579.33 a month. Since February 21, 1981, petitioner Preble has been entitled to receive $521.50 per month. She would be entitled to $695.33 per month under the city plan.

A brief review of the recent history of legislation relating to pension funds for police officers and fire fighters is necessary to understand the issues presented in this case. In January 1978, the Colorado Legislative Council Committee on Fire and Police Pensions (committee) estimated statewide unfunded accrued liabilities to be approximately $500,000,000. *See generally City of Colorado Springs v. State*, 626 P.2d 1122 (Colo.1981) (discussing history of pension fund funding). The committee estimated that at that time the city and county of Denver had an unfunded liability of approximately $270,000,000 and it estimated that the liability would increase at a rate of $30,000,000 annually. *Colorado Legislative Council Research Publication No. 229, Fire and Police Pensions*, at 5 (1977) (hereinafter *Publication No. 229*). With respect to the Denver pension plan, the committee stated that Denver

has adopted the policy of "pay-as-you-go" funding of pension benefits. Under pay-as-you-go funding the city appropriates monies annually to pay the benefits of those members of the department on retirement. The fund retains practically no balance at the end of any year and, if the City and County of Denver were to experience severe financial conditions, there would be no monies available to pay future benefits for either the present retirees or new retirees.

*Id.* The committee recommended that the General Assembly pass legislation that would require full funding of policemen's and firemen's pension funds to cover both unfunded accrued liabilities and the current annual service costs of pension benefits attributable to active members. *See City of Colorado Springs*, 626 P.2d at 1124. In response to this recommendation, the General Assembly enacted the Policemen's and Firemen's Pension Reform Law, sections 31–30–801 to –807, 12 C.R.S. (1978 Supp.), as an interim measure requiring full funding of policemen's and firemen's pension funds.

On April 3, 1978, the *Final Report on Policemen's and Firemen's Pensions* in Colorado was submitted to the state auditor and the General Assembly. It stated, in part:

In its simplest terms, Colorado's policemen's and firemen's pension problem amounts to this:

—Many policemen and firemen and their families may never receive all or a substantial portion of their pensions; or

—The taxpayers in many communities in coming years will be asked to accept huge tax increases or unthinkable cuts in municipal services to finance these pensions; unless

—Responsible leadership now reforms the policemen's and firemen's pension system and taxpayers recognize the need for higher levels of pension funding now to avoid higher taxes later; and

—Unless both employers and employees recognize the need for reform through adoption of a less costly pension benefit program to be offered in the future.

Colorado's policemen's and firemen's pension system is ill equipped to deliver its promises.

If the local police and fire pension situation is not now of disastrous proportions, a continuation of present contribution practices and generous benefits have the capacity to create a very serious crisis.

A study required by Senate Bill 46 was filed on February 2, 1979, prior to the enactment of Senate Bill 79. *See* ch. 98, sec. 1, § 31–30–901, 1978 Colo.Sess.Laws 452–53. This study, entitled *Colorado Police & Firemen's Pension Plans Actuarial Valuations as of January 1, 1978*, 2 (1979), provides:

> As of December 31, 1978, the 167 [pension] plans [throughout the state] have combined unfunded past service liabilities of $431.2 million. Of this amount, the two Denver plans have combined liabilities of $299.2 million, about 70% of the total. The four largest cities, Denver, Colorado Springs, Pueblo and Aurora, account for about 85% of the total.

The General Assembly's adoption of sections 31–30–1001 to –1016, provided a comprehensive benefit plan for firemen and policemen throughout the state. The legislative declaration of that statute provides, in part, that "any pension plan must be actuarially sound in order to assure the security of the pension system and that this part 10 is enacted to provide for the stability and security of policemen's and firemen's pension plans in this state." § 31–30–1001.

## II.

Petitioners assert that the right to survivor benefits payable to surviving spouses vested fully in Officers Preble and Peterson as soon as they became Denver Police Officers and the amount of those benefits could not, therefore, be decreased. The trial court held that the petitioners' rights were "not fully vested because the survivor payments are contingent on the spouse being married to the policeman at the time of his death. It is the court's determination that there was a limited vesting." The court of appeals stated that this action should have been brought by the personal representatives of the deceased officers. Since the petitioners did not bring this action as personal representatives, the court of appeals concluded they did not have standing to sue. We agree with the trial court's conclusion that the petitioners are entitled to survivor benefits under the state plan only and therefore affirm the trial court's dismissal of the complaint.

## A.

 In our view, the court of appeals erred in concluding that petitioners lack standing to sue. A surviving spouse's right to collect pension benefits is derivative of his or her spouse's pension right. *See Henry v. City of Los Angeles*, 201 Cal.App.2d 299, 313, 20 Cal.Rptr. 440, 448 (1962) (pensioner's widow may challenge changes in benefit plan made prior to her husband's death even though her rights did not vest until his death). A surviving spouse is a third-party beneficiary to the pension contract. *Webb v. Whitley*, 114 Ga.App. 153, 158, 150 S.E.2d 261, 265 (1966); *see also State ex rel. O'Donald v. City of Jacksonville Beach*, 142 So.2d 349 (Fla.Dist.Ct.App.1962) (widow acquired rights of a third-party beneficiary). Accordingly, we conclude that the petitioners have standing to sue for survivor benefits.

## B.

We next address whether rights to survivor benefits had vested in the petitioners' spouses prior to enactment of the state plan. In *Police Pension & Relief Board v. McPhail*, 139 Colo. 330, 338 P.2d 694 (1959), we addressed the validity of an amendment to the Denver Charter that increased fire fighters' and police officers' salaries and repealed a provision that coupled pension increases to salary increases. In *McPhail*, the plaintiffs had retired from the Denver Police Department, had served twenty-five years or more, and had satisfied all other requirements of the pension system prior to the effective date of the amendment. We stated:

> Retirement pay is defined as "adjusted compensation" presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, *provided he possesses the qualifications required by the act*, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay.

Until an employee has earned his retirement pay, or *until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right* of which the person entitled thereto cannot be deprived; it has ripened into a full contractual obligation.

*Id.* at 342, 338 P.2d at 700 (quoting *Retirement Bd. v. McGovern*, 316 Pa. 161, 174 A. 400 (1934) (additional citation omitted) (emphasis added)). The court noted that under the employment contract, if the "plaintiffs fulfilled all conditions they would receive a pension which would be subject to increase or decrease based upon the salary of the rank which they occupied as of the date of retirement." *Id.* 139 Colo. at 344, 338 P.2d at 701. Accordingly, we held in *McPhail* that the charter amendment unconstitutionally impaired the plaintiffs' vested contract rights.

In *Police Pension & Relief Board v. Bills*, 148 Colo. 383, 366 P.2d 581 (1961), thirteen retired members of the Denver Police Department sought a declaration that they were entitled to an increase in their individual pension equal to one-half of the raise in pay granted by a 1958 amendment to the Denver Charter, notwithstanding a 1956 amendment that purported to "repeal" an escalator clause from the charter.[3] We found that plaintiffs' pensions had not fully vested and, in determining whether the 1956 amendment applied to the plaintiffs, we held that prior to the police officer's

eligibility to retire, there was a limited vesting ... of their pension rights to the end that although prior to their eligibility to retire the pension plan could be changed, it could not be abolished nor could there be a substantial change of an adverse nature, without a corresponding change of beneficial nature. An employee's pension rights prior to his eligibility

to retire may be modified for the purpose of keeping the pension system flexible to permit adjustments in accord with changing conditions if at the same time the basic integrity of the plan is still maintained. Hence, *prior to eligibility for retirement changes may properly be made in a pension plan if these changes strengthen or better it, or if they are actuarially necessary.*

*Id.* at 390, 366 P.2d at 584 (emphasis added). We stated that upon retiring the plaintiffs could have expected that subsequent pay increases to those in active service would be reflected in their pensions. The 1956 amendment in *Bills* "constituted an adverse change in the overall pension plan which deprived plaintiffs of a very substantial right, was unaccompanied by a corresponding change of a beneficial nature, was not shown to be actuarially necessary, nor that it in anywise strengthened or bettered the pension plan." *Id.* at 391, 366 P.2d at 584–85. We therefore held in *Bills* that the 1956 amendment that repealed the escalator clause was ineffective and inapplicable as it related to the plaintiffs. *Id.* at 392, 366 P.2d at 585.

*McPhail* and *Bills* both involved pension benefits based on age and length of service. *McPhail* held that retirement benefits are not vested until the requisite conditions of the statute are met. In *Bills*, we held that vesting of pension rights occurs at retirement or upon achieving the requisite age and service. Although the instant case involves survivor benefits, the principles of *McPhail* and *Bills* apply. A death benefit for a surviving spouse of a member not eligible for retirement cannot be vested until the statutory conditions are met. Section 31–30–1008(1) provides, in part: "If a member who is not eligible for the normal retirement pension described in section 31–30–1006 dies while in active service and leaves a surviving spouse or dependent children, or both, one of the following sur-

---

**3.** The escalator clause at issue stated:

In the event that salaries in the Denver Police Department shall be raised after the effective date of this amendment those members of said department who shall have previously been retired from active service and who are

receiving a pension shall be entitled to an increase in the amount of their pension equal to one-half of the raise in pay granted in the rank said member held at the time he was retired.

148 Colo. at 385, 366 P.2d at 582.

vivor benefits shall be paid...." The conditions to receiving survivor benefits under this section are that the member die while in active service with the department, and that the member have a surviving spouse or dependent children. The rights of the petitioners to survivor benefits under section 31–30–1008 vested upon the death of their husbands. Prior to that time petitioners had only a limited vested right to the survivor benefits. *E.g., Burks v. Trustees of the Firemen's Pension Fund,* 97 Ga. App. 233, 102 S.E.2d 923 (1958); *Branson v. Firemen's Retirement Fund,* 79 Idaho 167, 312 P.2d 1037 (1957); *Butler v. Minneapolis Police Relief Ass'n,* 283 Minn. 70, 166 N.W.2d 705 (1969).

■ Accordingly, we hold that prior to a police officer's or fire fighter's death, there is limited or partial vesting of survivor benefits. Until survivor benefits fully vest, a pension plan can be changed; however, any adverse change must be balanced by a corresponding change of a beneficial nature, a change that is actuarially necessary, or a change that strengthens or improves the pension plan.

### III.

■ To justify the monetary loss suffered by the petitioners, there must be a corresponding change of a beneficial nature or the change must be actuarially necessary. *Bills,* 148 Colo. at 390–91, 366 P.2d at 584. Petitioners argue that even if the rights at issue in this case were only partially vested, the reduction was improper because there was no corresponding change of a beneficial nature. Petitioners assert that the detriment to an individual must be balanced against individual benefits. They rely on a line of California cases for this proposition:

> [I]t is by advantage or disadvantage to the individual employes whose already earned and vested pension rights are involved that the validity of attempted changes in those rights depends, and benefits subsequently obtained by other employes cannot operate to offset detriments imposed on those whose pension rights have theretofore accrued.

*Abbott v. City of Los Angeles,* 50 Cal.2d 438, 453, 326 P.2d 484, 492 (1958); *see Betts v. Board of Admin.,* 21 Cal.3d 859, 582 P.2d 614, 148 Cal.Rptr. 158 (1978); *Frank v. Board of Admin.,* 56 Cal.App.3d 236, 128 Cal.Rptr. 378 (1976); *see also Hammond v. Hoffbeck,* 627 P.2d 1052 (Alaska 1981); *Nash v. Boise City Fire Dep't,* 104 Idaho 803, 663 P.2d 1105 (1983); *American Fed. of State, County & Mun. Employees v. Commonwealth,* 80 Pa. Commw. 611, 472 A.2d 746 (1984). Respondent Association urges us to adopt the reasoning of those cases that focus on the group in balancing detriments against benefits. This view was set forth in *Singer v. City of Topeka,* 227 Kan. 356, 607 P.2d 467, 475 (1980), which stated that "insofar as the rights of active employees in and to pension plans are concerned, the reasonableness of legislative changes is to be measured by the advantage or disadvantage to the affected employees as a group or groups; validity of change is not dependent upon the effect upon each employee." *See Public Employees' Retirement Bd. v. Washoe County,* 96 Nev. 718, 722, 615 P.2d 972, 975 (1980).

We need not choose between these two lines of cases because under either analysis the detriments were offset by corresponding benefits. In our view, the financial loss experienced by the petitioners is offset by the creation of a fund that will ensure that the petitioners' future benefits are funded by a stable and actuarially sound pension fund. The General Assembly enacted this legislation in response to a crisis in pension plan funding. As the trial court found, the legislation resulted in beneficial changes because it improved funding so that money would be available in the future to pay pensions. Had the General Assembly not changed the funding scheme for death and disability pensions, the City and County of Denver eventually would have exhausted its pension funds. We conclude that ensuring that the individual petitioners receive survivor benefits as long as they remain eligible offsets the harm the petitioners are suffering due to their lower monthly benefit payments.

Likewise, the benefits to all Colorado's firefighters and police officers offset any corresponding detriments. While benefits of many were reduced, the record indicates that Denver and other municipalities lacked the financial ability to develop a stable pension system. In order to avoid bankrupting the Denver system and others throughout the state, it was necessary to reduce the benefits for the group as a whole. Ensuring that the statewide pension system is actuarially sound justifies any corresponding detriments to the group.

The trial court found that changes in the death benefits under the pension reform act were actuarially necessary and therefore proper. In *City of Colorado Springs v. State*, 626 P.2d 1122, 1125 n. 7 (Colo. 1981), we stated: "A pension fund is said to be actuarially sound if there are no unfunded accrued liabilities and the current cost of pension benefits attributable to active members is being paid on the annual basis." A slightly different definition is set forth in section 31–30–1002(1), 12 C.R.S. (1985 Supp.), which states, in part:

> "Actuarially sound" means a policemen's or firemen's pension fund determined by the board to be receiving or scheduled to receive employee and member contributions in each fiscal year equal to the annual contributions actuarially determined to be necessary to pay the annual current service cost of pension benefits attributable to active employees and to pay the annual contribution necessary to amortize any unfunded accrued liability over a period not to exceed forty years.

We agree with the trial court's conclusion that under either definition the Denver pension fund was not actuarially sound. It is undisputed that Denver paid pensions on a pay-as-you-go basis and that no fund for accrued liabilities existed. The trial court found that the accrued liabilities for policemen's and firemen's pension funds approximated $500,000,000. The record amply reflected that pay-as-you-go funding was actuarially unsound. The state plan resulted in an improved pension plan because the changes were of a beneficial nature and were actuarially necessary.[4] Accordingly, the General Assembly's modification of the survivor benefits was proper.

Accordingly, we affirm the court of appeals as to all issues except the issue of standing, which we reverse.

---

4. In adopting the state plan, the General Assembly declared that "the establishment of policemen's and firemen's pension plans in this state is a matter of statewide concern which affects the public safety and general welfare...." § 31–30–1001. Matters relating to pension plans for police officers and fire fighters are also issues of local concern. When a matter is of concern to both levels of government, the state, the municipality, or both, may enact legislation concerning the matter. "[O]nly if the state and local enactments conflict will the state legislation supersede the legislation of the municipality." *City & County of Denver v. Colorado River*, 696 P.2d 730, 741 (Colo.1985) (citations omitted). Because pension plans are matters of both state and local concern, the state plan superseded the city plan. Section C5.42 of the Denver City Charter (1982) was repealed on May 19, 1987.