**COLORADO SPRINGS FIRE FIGHTERS ASSOCIATION, LOCAL 5, Colorado Springs Police Protective Association, Colorado Springs City Employees Association, Carl Petry, Hurstle Stidham, Donald Krabbenhoft, Leonard Huscher, Leland Kinney, Dean Clapper, Robert Sawall, John Gordon, and Donald Johnson, Plaintiffs–Appellees, Cross–Appellants,**

v.

**CITY OF COLORADO SPRINGS, Defendant–Appellant, Cross–Appellee.**

No. 88SA228.

Supreme Court of Colorado, En Banc.

Dec. 18, 1989.

11, of the Colorado Constitution and article I, section 10, of the United States Constitution.[1] Because we believe that the 1966 city ordinance did not create a pension type benefit, nor a contractual obligation, we reverse.

Brauer & Buescher, P.C., Thomas B. Buescher, Denver, for Colorado Springs Fire Fighters Ass'n.

Sherman & Howard, Raymond M. Deeny and Theodore A. Olsen and James G. Colvin, II, City Atty. for Colorado Springs, Colorado Springs, for City of Colorado Springs.

Justice ROVIRA delivered the Opinion of the Court.

In this class action lawsuit the appellant, the City of Colorado Springs (City), appeals the trial court's grant of summary judgment in favor of the plaintiffs/appellees. The trial court held that a 1966 city ordinance which provided that the City would pay the health insurance premiums for retired city employees created a vested quasi-pension type benefit. It also found that the two ordinances subsequently adopted by the city council, which limited the City's premium contribution, were an unconstitutional impairment of the plaintiffs' contractual rights in violation of article II, section

## I.

On January 25, 1966, the Colorado Springs City Council passed Ordinance No. 3256, which stated that the City's group health plan would be available to all employees, that the City would contribute $6 per month toward the cost of the program for each employee, and that upon an employee's retirement the City would pay "the cost of continuing" health plan coverage if the employee met certain eligibility requirements.[2] On June 14, 1966, the city council enacted Ordinance No. 3307 which amended Ordinance No. 3256. The amendment incorporated Medicare coverage into the health plan and provided that the City's payment of premiums for non-retired employees was subject to future adjustment by the city council.

Between January 1, 1966 and January 1, 1979, the City paid the full health plan premium cost for all eligible retirees. On December 26, 1978, the city council passed Ordinance No. 78–232, which placed a cap of $91.40 per month on the amount the City would contribute toward the individual health insurance premiums of employees who had retired prior to January 1, 1979.[3]

**1.** Jurisdiction in this court is pursuant to section 13–4–102(1)(b), 6A C.R.S. (1987), because the constitutionality of certain municipal ordinances is at issue.

**2.** Ordinance No. 3256 provides:

The City's group plan with the Colorado Hospital Service (Blue Cross–Blue Shield) is available to all regular employees, both classified and unclassified, in either General City's group or in the Department of Public Utilities group. The City will contribute $6.00 per month toward the total monthly cost of each participant's program. This amount may be increased by authority of the City Council or the Council sitting as the Utility Board. Upon retirement of an employee the City will pay

the cost of continuing his Blue Cross–Blue Shield program (either single or family plan) provided the employee has been a member of either group during the five-year period immediately preceding retirement. The provisions of this section become effective January 1, 1966, and the City will pay the entire monthly premium cost for those former employees on the lists who are members of either the General City group or Department of Public Utilities group of the Colorado Hospital Service as of that date.

**3.** Ordinance No. 78–232 provides that:

The City of Colorado Springs shall provide group medical insurance for all full time permanent employees. The City's contribution to the premium for retired employees employed

On November 23, 1982, the city council passed Ordinance No. 82–195 which reinstated, as of January 1, 1983, payment by the City of the full health insurance premiums for employees who had retired prior to January 1, 1979. Subsequently, the city council adopted Ordinance No. 84–115, which required the City to pay the full premium cost for those employees who were eligible to retire as of January 1, 1979. Employees in this group were reimbursed the premium expense they incurred from January 1, 1983 to the time this ordinance was enacted in June 1984.

As a result of these ordinances, the current premium for those employees who were eligible to retire or did retire prior to January 1, 1979, is being fully paid by the City. Employees who retired prior to January 1, 1979, however, have not been reimbursed for the premium costs they incurred between January 1, 1979 and January 1, 1983. Employees who were eligible to retire as of January 1, 1979, who retired between January 1, 1979 and January 1, 1983, have not been reimbursed for the premium expenses they incurred during this period. Finally, employees who were hired before January 1, 1979, but were not eligible to retire on that date, are subject upon retirement to the $91.40 limitation. Employees in this group, who have retired, are incurring out-of-pocket costs to the extent that their monthly premiums exceed the $91.40 limitation. Employees in this group, who have not yet retired, have not suffered any economic harm as a result of the 1978 ordinance.

In September 1985, the plaintiffs filed suit, alleging that the 1966 ordinance created a pension type benefit which involved a contractual commitment and that Ordinance No. 78–232 was an unconstitutional impairment of "contracts and previously vested rights" violative of article II, section 11, of the Colorado Constitution, and article I, section 10 of the United States Constitution. The plaintiffs bringing this action are comprised of three subgroups. The first group are those employees who retired prior to January 1, 1979. The second group is composed of those employees who were eligible, but had not retired, prior to January 1, 1979. Finally, the third group is composed of those employees who were employed as of January 1, 1979, but were not then eligible to retire.[4]

The plaintiffs seek declaratory relief regarding their claim that the 1966 ordinance created a contractual quasi-pension type benefit. They also seek an injunction prohibiting enforcement of the subsequent ordinances which limit the City's health benefit premium contribution. Finally, they seek monetary damages for the expenses they have incurred as a result of the City's failure to fully pay these premiums.

The City moved for summary judgment on March 15, 1988. Plaintiffs opposed the City's motion and filed a cross-motion for summary judgment. The trial court granted plaintiffs' cross-motion for summary judgment, finding that the 1966 ordinances created a "vested, quasi-pension benefit" for employees and retirees, and that Ordinance No. 78–323 was an unconstitutional impairment of these rights in violation of article II, section 11, of the Colorado Constitution and article I, section 10, of the United States Constitution.[5]

---

by the City before January 1, 1979, shall not exceed $91.40 per month. The City's contribution to [the] premium for retired employees employed by the City on and after January 1, 1979, shall be equal to the City's contribution to [the] premium for active employees as that amount may be established from time to time by the City Council; provided, however, that the City's contribution to [the] premium for such retired employees shall not exceed $91.40 per month.

**4.** Plaintiffs concede that the 1978 ordinance may be applied to employees hired after the effective date of the ordinance.

**5.** Article II, section 11, of the Colorado Constitution provides:

**Ex post facto laws.** No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly.

Article I, section 10, of the United States Constitution provides:

**Powers denied individual states.** (1) No state shall enter into any treaty, alliance or confederation; grant letters of marque or reprisal; coin money; emit bills of credit; make anything but gold and silver coin a

## II.

The plaintiffs' primary contention is that the 1966 ordinance, in which the City agreed to pay the health insurance premiums for eligible retirees, created a contractually enforceable pension benefit. As the trial court indicated, and the respondent candidly admitted during oral argument before this court,[6] the resolution of this case is dependent upon whether the 1966 ordinance created a quasi-pension benefit.

## A.

■ Rights which accrue under a pension plan are contractual obligations which are protected under article II, section 11, of the Colorado Constitution and article I, section 10, of the United States Constitution. *Police Pension & Relief Bd. v. McPhail*, 139 Colo. 330, 338 P.2d 694 (1959). As we stated in *Kirschwing v. O'Donnell*, 120 Colo. 125, 129, 207 P.2d 819, 821 (1949), pension plans promote important public policy considerations because they are structured "to reward efficiency, to encourage officers to remain in the service, and to give assurance of a decent living upon retirement...."

Plaintiffs contend that those employees who had retired or were eligible to retire as of January 1, 1979, had fully vested pension rights, analogous to the rights we considered in *McPhail*. Those workers who were employed prior to January 1, 1979, but who were not eligible to retire as of that date, are alleged to have partially vested pension rights which may be modified only under limited circumstances. *Police Pension & Relief Bd. v. Bills*, 148 Colo. 383, 366 P.2d 581 (1961).

In determining whether these health insurance benefits are, in fact, pension type benefits, it is helpful to compare the Colorado statutory provisions addressing pension plans with the attributes of the city ordinance. The Public Employee Retirement Association (PERA) creates a pension system for most state employees, as well as municipal, city, county, and school district employees.[7] The Policemen's and Firemen's Pension Reform Act created a pension fund for these employees and requires certain municipalities to participate in the program.[8] These pension plans are intended to provide employees with an actuarially sound fund from which eligible retirees will receive periodic benefit payments. The payment to which retirees are entitled is calculated based upon their length of employment and their salary level. Entitlement to annual pension payment increases is also statutorily determined.[9]

These statutory provisions have established a defined benefit contributory pension system in which most public employees are required to participate.[10] These plans are funded through mandatory employer and employee contributions of a specified percentage of the employee's salary to the applicable pension fund. For

tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.

6. In response to a question by the court, plaintiffs' counsel replied:
MR. BUESCHER: Your Honor, I hate to ever be in a position where there's a linchpin to an argument that if it's gone, the whole case falls apart from my point of view. But, that's where I am in this case, quite candidly. If this isn't a pension benefit, if this court doesn't recognize it as such, as Judge Baker did, a quasi-pension plan, then, then my arguments, your Honor, the foundation falls out from underneath them. That's the law, unless, unless this court decides to use this case to create some new law. But, the current law supports only the concept of a pension plan. That is, a, the current state of the law.

7. §§ 24–51–101 to –1404, 10B C.R.S. (1986).

8. The City of Colorado Springs is subject to the state statutory scheme which requires that cities which have a paid fire department and a population in excess of 100,000 establish a fire fighters pension fund. § 31–30–501, 12B C.R.S. (1986). These provisions require that the fund be administered by a board of trustees who must follow certain funding guidelines. § 31–30–901, 12B C.R.S. (1986). *See, e.g., Peterson v. Fire & Police Pension Ass'n*, 759 P.2d 720 (Colo.1988); *Colorado Springs v. State*, 626 P.2d 1122 (Colo.1980).

9. § 24–51–1006, 10B C.R.S. (1986).

10. *See* §§ 24–51–101 to –1404, 10B C.R.S. (1986); §§ 31–30–901 to –1016, 12B C.R.S. (1986).

PERA the required contribution is statutorily determined, and for the police and firemen's pension fund it is set periodically by the Policemen's and Firemen's Pension Reform Commission. By making these contributions, employees obtain a limited vesting of pension rights, which ripen into vested pension rights upon attainment of the respective eligibility requirements. *See Police Pension & Relief Bd. v. Bills*, 148 Colo. 383, 366 P.2d 581 (1961); *City of Aurora v. Hood*, 194 Colo. 80, 82, 570 P.2d 246, 247 (1977); *Benson v. City of Sheridan*, 31 Colo.App. 540, 544–45, 506 P.2d 401, 403 (1972). Employees who terminate their employment prior to retirement are entitled to a refund of their contributions to the pension plan.[11]

Employees may also elect to participate in the PERA health benefit insurance plan. Under PERA, a separate health care fund has been created to "provide a premium subsidy for health care benefit recipients choosing to enroll in the health care program...."[12] The amount of the insurance premium subsidy to be paid from the health care fund is determined annually by the General Assembly. The amount of the premium subsidy may also be affected by the retiree's years of service and Medicare benefit eligibility. The administrative board "may change the design and costs of the health care program at any time."[13]

Health insurance benefits may also be provided to retirees covered by the Policemen's and Firemen's Pension Reform Act.[14] The provisions of this act indicate that the fund's administrative board may contract with carriers to provide this type of coverage. The act does not specify the manner in which these benefits are to be funded, nor does it specify the extent of coverage which may be provided.

The City was not required by the state statutory provisions to provide health insurance benefits to its employees. The city council, however, pursuant to the authority conferred by the city charter, adopted the 1966 ordinance which provided for the payment of health insurance to city employees. The City's payment of health insurance premiums is made out of current revenues through the annual appropriation process.

In contrast to the state's mandatory prefunded contributory benefit pension plan, city employees are not required to contribute a percentage of their salary to fund the health insurance program. Instead, the health benefits provided by the City are like the PERA health fund provisions. Under the PERA program, the amount of the health benefit premium subsidy, which directly affects the level of employee contribution, is determined on an annual basis; the cost and design of the plan is subject to change; and employee participation is optional.

The New York Court of Appeals in *Lippman v. Board of Education*, 66 N.Y.2d 313, 496 N.Y.S.2d 987, 487 N.E.2d 897 (1985), addressed a situation which is very similar to the case at bar. In *Lippman*, the board of education, from 1971 through 1983, had paid the full cost of health insurance premiums for its retirees. In 1983, the board voted to reduce its payments for health insurance premiums to 50% of the total premium cost. The court rejected the retired teacher's assertion that such a reduction violated a state constitutional provision which protected pension rights.[15] The court held that:

> court did not consider whether health plan benefits were a pension benefit subject to vesting. Instead, the court was addressing a collective bargaining agreement which excluded "all retirement systems" from the scope of union negotiation. The *Mason City* court, relying upon the legislature's intent to prevent the abdication of fiscal responsibility by allowing the collective bargaining process to supersede legislative control over the payment of retirement benefits, held that health benefit premiums were a retirement type system and therefore not subject to collective bargaining.

---

11. § 24–51–405, 10B C.R.S. (1986); § 31–30–1011, 12B C.R.S. (1986).

12. § 24–51–1201, 10B C.R.S. (1986).

13. § 24–51–1202(4), 10B C.R.S. (1986).

14. § 31–30–1005(7)(a), 12B C.R.S. (1989).

15. Plaintiffs argue that *Mason City v. Public Employment Relations Board*, 316 N.W.2d 851 (Iowa 1982), supports their assertion that these health insurance benefits should be considered a pension benefit. In *Mason City*, however, the

[T]he only relation between health benefits and retirement benefits is the purely incidental one that the latter provides the means by which the former is paid in those instances where the employer has elected to pay less than the full premium. The result of a reduction in the proportion of the health insurance premium paid by the school district is that a retiree will receive a smaller retirement check, but this is no more a change in retirement benefits than would be an increase in the price of eggs at the supermarket or in a retiree's apartment rent. The retiree has less to spend, but there has been no change in his *retirement benefit.*

*Id.* at 318–319, 496 N.Y.S.2d at 316–17, 487 N.E.2d at 900.

Congress also distinguished welfare type benefits, such as health insurance, from pension type benefits when it adopted the vesting standards contained in the Employee Retirement Income Security Act (ERISA).[16] Congress has excluded health and welfare benefits from the mandatory vesting requirements that are applied to other retirement benefits.[17] The Fourth Circuit noted that mandating "vesting of these ancillary [health plan] benefits would seriously complicate the administration and increase the costs of plans whose primary function is to provide retirement income." *Sutton v. National Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). The court in *In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir.1986), noted that:

> Congress expressly exempted employee welfare benefit plans from stringent vesting, participation, and funding requirements. Congress recognized the

differences between welfare benefit plans and pension plans, and we discern no basis for finding mandatory vesting in ERISA of retiree welfare benefits. We believe that the legislature, rather than the courts, should determine whether mandatory vesting of retiree welfare benefits is appropriate.

A consistent pattern emerges when one considers the Colorado statutory scheme addressing pension benefits, the attributes of the Colorado Springs ordinance, and the ERISA provisions. Each of these factors contributes to our conclusion that the health plan benefits provided for here are not pension benefits which are subject to vesting.

### B.

The plaintiffs also assert that even if the 1966 ordinance was not a pension plan benefit, it nevertheless created an enforceable contract right. Those plaintiffs who retired prior to the passage of the 1966 ordinance did not enter into a contractual relationship with the City regarding their health care benefits, because the City's payment of their health care benefits was a unilateral act for which no performance or consideration was received by the City. Similarly, no performance or consideration was received by the City from those employees who were eligible to retire, but had not done so, at the time the 1966 ordinance became effective. The City, as all parties concede, initially had no obligation to pay these benefits, and as to these employees, such payment was gratuitous.

Those plaintiffs who were employed prior to the effective date of the 1966 ordinance, but at that time were not yet eligi-

---

16. 29 U.S.C. § 1051(1).

17. The legislative history of ERISA provides the following explanation:

> In the case of a defined benefit plan the bill provides that the accrued benefit is to be determined under the plan, subject to certain requirements. The term "accrued benefit" refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits, such as medical insurance or life insurance, which are sometimes provided for em-

ployees in conjunction with a pension plan, and are sometimes provided separately. To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.

H.R.Rep. No. 807, 93d Cong., 2d Sess. 60–61 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4726.

ble to retire, assert that their continued employment was induced, at least in part, by the City's benefit package. Therefore, they conclude that their continued employment involved both performance and detrimental reliance. This assertion is also raised by those who were employed by the City prior to the adoption of the 1978 ordinance, which placed a cap on the City's health insurance benefit premium contributions.

■■■ A statute or ordinance will be considered a contract, subject to the provisions of the contract clause, only when its language and the surrounding circumstances manifest a legislative intent to create private contractual rights enforceable against the state or municipality. *State of Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938). It is presumed that a law "is not intended to create private contractual vested rights, but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Board of Educ.*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). The 1966 city ordinance involved here, contained no words of contract and did not require the consent of city employees to become effective. *Id.*

The city council also evidenced a lack of intent to create a contract by its amendment of the 1966 ordinance, within six months of its passage. Finally, the 1966 ordinance did not address the level of benefits to be provided. It is unlikely that such a material term would be left undefined if the City intended to create a contractual obligation.

■■■ Legislation should be construed in a manner which supports its constitutionality. *See, e.g., Screws v. United States*, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495 (1945). The 1966 ordinance passed by the city council must be considered, *in pari materia*, with the city charter. The city charter, in article VII, section 40, provides:

*No Liability Without Appropriation—* Neither the Council nor any administrative officer or employee of the City shall have authority to make any contract involving the expenditure of public money, or impose upon the City any liability to pay money, unless and until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability of the City under such contract or in consequence thereof to mature during the period covered by the appropriation....[18]

Plaintiffs' interpretation of the 1966 ordinance would impose future liability upon the City by requiring subsequent councils to annually appropriate the funds needed to fund the health premium obligations. This interpretation is erroneous because it is inconsistent with the limitations imposed by the city charter.

The payment of health care premiums is one of the features of the City's benefit package which is provided to enable the City to both hire and retain qualified individuals. The establishment and modification of such an employee benefit has traditionally been within the scope of legislative discretion. For example, in *Keeling v. Grand Junction*, 689 P.2d 679, 680 (Colo. App.1984), *cert. denied*, the court held that city employees did "not have a vested contractual right in the continuance of a particular rate or method of compensation." The court upheld the Grand Junction City Council's termination in 1979 of an incentive pay program, adopted in 1969, which increased the compensation of certain employees upon their completion of a specified number of college credits. The court stated that "[a] city council, in the exercise of its legislative power, cannot enter into a contract which will bind succeeding city councils and thereby deprive them of the unrestricted exercise of their legislative power." A similar result was reached in *Chicago Patrolmen's Association v. City of Chicago*, 56 Ill.2d 503, 309 N.E.2d 3

---

**18.** This provision was enacted pursuant to article XX of the Colorado Constitution, which grants home rule cities plenary legislative authority over matters exclusively local in nature. *See, e.g., Kelly v. Fort Collins*, 163 Colo. 520, 431

P.2d 785 (1967). The ordinance in question is a matter of local concern which has not been addressed by state statutory provisions, and is therefore subject to the limitations imposed by the city charter.

(1974), where the court held police officials did not "have a property interest" in the continuation of a longstanding policy of providing officers with "step" and "longevity" salary increases. *See also Foley v. Consolidated City of Indianapolis,* 421 N.E.2d 1160 (Ind.App.1981) (discontinuation of college incentive pay program upheld even though employees allegedly worked in reliance on the program).

 The plaintiffs' assertion that they detrimentally relied upon the continuation of these benefits is also without merit. Persons dealing with the City are on constructive notice of the scope of authority possessed by the municipal officials with whom they are dealing. *City of Englewood v. Ripple & Howe, Inc.,* 150 Colo. 434, 374 P.2d 360 (1962); *Tenney v. City & County of Denver,* 119 Colo. 263, 203 P.2d 504 (1949). This constructive notice includes the knowledge that the city council acted pursuant to the authority granted it by the city charter and subject to the limitations provided therein. *See Keeling v. Grand Junction,* 689 P.2d 679 (Colo.App. 1984), *cert. denied.* The plaintiffs' interpretation of the 1966 ordinance is inconsistent with the limitations imposed by the city charter, which prohibits the imposition of future liability upon the City, unless prior appropriation is made. Plaintiffs could not have reasonably relied upon such an interpretation of the ordinance. *Id. See also Chicago Patrolmen's Ass'n v. City of Chicago,* 56 Ill.2d 503, 309 N.E.2d 3 (1974).

We believe that the circumstances surrounding the adoption of the 1966 ordinance and the restrictions imposed by article 40 of the city charter, establish that the council did not intend to create a pension type benefit or a contract when it adopted this measure. Instead, the council acted within the bounds of its authority and enacted an employee benefit provision, which was to remain in effect until the council, in the exercise of its discretionary legislative powers, elected to modify it.

Because of our resolution of these issues, there is no need to address the City's argument that the trial court erred in certifying a class action. Also, we need not address issues raised in the cross-appeal in light of our ruling. The judgment of the trial court is reversed.