In the Matter of the Petition of GF
GAMING CORPORATION,
Petitioner–Appellant,

v.

HYATT GAMING MANAGEMENT, INC.;
Windsor Woodmont Black Hawk Resort
Corporation, Respondents–Appellees,

and

Colorado Limited Gaming Control
Commission, Appellee.

No. 02CA0319.

Colorado Court of Appeals,
Div. IV.

Aug. 14, 2003.

Burg Simpson Eldredge Hersh & Jardine, P.C., David P. Hersh, Diane Vaksdal Smith, Englewood, Colorado, for Petitioner–Appellant.

Roger M. Morris, LLC, Roger M. Morris, Denver, Colorado, for Respondent–Appellee Hyatt Gaming Management, Inc.

Dill Dill Car Stonbraker & Hutchings, P.C., Patrick D. Tooley, Denver, Colorado, for Respondent–Appellee Windsor Woodmont Black Hawk Resort Corporation.

Ken Salazar, Attorney General, Ceri Williams, Assistant Attorney General, Denver, Colorado, for Appellee Colorado Limited Gaming Control Commission.

Opinion by Judge GRAHAM.

Petitioner, GF Gaming Corporation, a Colorado gaming licensee with casinos in Central City, appeals from the order of the Colorado Limited Gaming Control Commission dismissing its petition for a hearing. We affirm.

Respondents, Hyatt Gaming Management, Inc. and Windsor Woodmont Black Hawk Resort Corporation, applied for gaming licenses to operate Black Hawk Casino by Hyatt in the City of Black Hawk. In connection with its license application, Hyatt and Windsor sought the city's approval of the proposed structure of the casino. The Black Hawk Historical Architectural Review Commission (HARC) determined, pursuant to Colo. Const. art. XVIII, § 9(3)(b), that the structure conformed to the architectural styles common to the city before World War I. GF Gaming did not challenge HARC's determinations.

The Commission then approved the gaming licenses of Hyatt and Windsor in public session after the Commission considered confidential investigative and licensing reports presented by the Colorado Division of Gaming in an executive session.

GF Gaming filed a petition requesting a hearing before an administrative law judge pursuant to the Dep't of Revenue Reg. 47.1–213, 1 Code Colo. Regs. 207–1, concerning the licensure of Hyatt and Windsor. The petition alleged that the proposed Black Hawk Casino did not conform to the architectural styles required by the constitution.

Windsor and Hyatt filed objections to the petition and requested a more definite statement of the issues and relief requested. Hyatt also requested an order disallowing the petition because GF Gaming failed to demonstrate that it was an aggrieved party and therefore lacked standing to petition for a hearing under Dep't of Revenue Reg. 47.1–208, 1 Code Colo. Regs. 207–1.

In a supplemental statement, GF Gaming requested a hearing before the Commission-

er pursuant to Reg. 47.1–208. GF Gaming alleged that it had standing to seek such relief because it was aggrieved by the Commission's decision to grant gaming licenses to Hyatt and Windsor in that it could not "fairly compete" if some licensees were issued licenses without having to comply with the same architectural standards GF Gaming was required to meet. GF Gaming also requested public disclosure of the Commission's review process underlying its decision to grant Hyatt and Windsor gaming licenses.

The Commission dismissed GF Gaming's petition, concluding that it was not an aggrieved party and lacked standing to pursue a hearing in this matter. The Commission also concluded that GF Gaming failed to state a claim upon which relief could be granted because the Commission lacked authority to review decisions by municipalities concerning conformity with historical structures. This appeal followed.

GF Gaming contends that the Commission erred in concluding that it was not an aggrieved party under Reg. 47.1–208 and thus lacked standing to seek an adjudicatory hearing. We disagree.

■ Our review is limited by the standard set forth in the State Administrative Procedure Act (APA), § 24–4–106(7), C.R.S.2002. Thus, the agency action must be affirmed unless the court finds that the agency exceeded its constitutional or statutory authority, made an erroneous interpretation of law, acted in an arbitrary or capricious manner, or made a determination that is unsupported by the evidence in the record. *Ainsworth v. Colo. Ltd. Gaming Control Comm'n*, 45 P.3d 768 (Colo.App.2001).

■ "In sum, the courts may not overturn agency actions unless such actions are arbitrary, capricious, legally impermissible, or an abuse of discretion." *Colo. Real Estate Comm'n v. Hanegan*, 947 P.2d 933, 935 (Colo.1997).

Regulation 47.1–208 provides that "A person aggrieved by an action of the Commission ... that was taken without a hearing may ... petition the Commission for a hearing. The Commission may in its discretion, disallow the petition."

This jurisdictional prerequisite is similar to the requirement for standing to obtain judicial review of an agency action under the APA, which provides that the party must be "adversely affected or aggrieved" by the agency action. Section 24–4–106, C.R.S.2002. We note, however, that even if GF Gaming would have standing as an aggrieved party, the Commission still has the discretion under the regulation to disallow its petition.

■ To have standing, a petitioner must assert a legal basis on which a claim for relief can be grounded and must allege an injury in fact to a legally protected or cognizable interest. *Ainsworth v. Colo. Ltd. Gaming Control Comm'n, supra.*

■ GF Gaming asserts that it is an aggrieved party because "[t]he Commission by its failure to make any review of compliance [with Colo. Const. art. XVIII, § 9] has made it economically impossible for those casinos that do comply with the Constitution to fairly compete." GF Gaming maintains that the massive size and design of Black Hawk Casino is in sharp contrast to the original goal of revitalizing existing historic buildings enunciated in the legislative history of the Limited Gaming Act. Seeking to question the supervisory role of the Commission charged with approving licenses, GF Gaming argues that, as a competitor, it is aggrieved by the grant of a license to an applicant whose plans do not comport with the historical controls that should have been enforced by the local authorities, but were not. Whatever the merits of this argument may be, we nonetheless conclude that GF Gaming was not harmed by the grant of a license to Black Hawk Casino.

■ Although the economic impact of lawful competition may, as a practical matter, inflict an injury, it cannot confer standing unless the economic interest harmed is protected by a statutory or constitutional provision. A legislative intent to protect the economic interest from competitive harm must be explicit in or fairly inferable from the statutory provisions under which an agency acts, or the legislature must expressly confer standing on competitors to seek review of agency action. *Cloverleaf Kennel Club, Inc.*

*v. Colo. Racing Comm'n,* 620 P.2d 1051 (Colo.1980).

The Commission does not have authority to enforce the historical guidelines, and the city was clearly the proper forum in which to wage this dispute. Once the plans were approved, the issuance of a license by the Commission cannot interfere with "a legally protected or cognizable interest" of GF Gaming. *See Ainsworth v. Colo. Ltd. Gaming Control Comm'n, supra,* 45 P.3d at 772. Although the city of Black Hawk may have improvidently approved the plans for Black Hawk Casino, we know of no rule that would allow the Commission to supervise or correct the city's action.

■ Beyond the competition with a non-historic business, GF Gaming expressed no particularized harm. GF Gaming did not expressly allege any direct economic losses or injuries traceable to the Commission's action in issuing a casino license to its non-conforming competitor. Similarly, although patrons conceivably may choose Black Hawk Casino over GF Gaming's casinos, any injury that may be inferred from that hypothetical preference is both too speculative and too indirect to be actionable. *See Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm'n, supra.* Thus, the Commission's decision does not directly affect GF Gaming's rights as a licensee. *Cf. Ainsworth v. Colo. Ltd. Gaming Control Comm'n, supra.*

Therefore, even if we were to construe the Limited Gaming Act and the regulations to protect licensees against competitive economic injury, GF Gaming failed to allege that it suffered an injury in fact or threat to a legally protected interest essential to state a claim for relief. We thus conclude that the Commission did not abuse its discretion by dismissing GF Gaming's petition for a hearing.

In view of our resolution, we need not address GF Gaming's remaining contentions.

The order is affirmed.

Chief Judge DAVIDSON and Judge NIETO concur.