COLORADO COURT OF APPEALS                    2016COA104

Court of Appeals No. 15CA0849
Boulder County District Court No. 14CV31182
Honorable Dave Williams, Judge

Charles Wibby, Janix Hogle, Maureen Crook, Richard Eggers, Peter Dente, Steve Miller, Barbara Knollenberg, Don Sherwood, Irving Armstrong, Gloria Armstrong, Wayne Bailey, Harriet Bailey, Mike Baum, Carol Baum, Fe Barran, Mark Briggs, William Brown, Jane Brown, James Burow, Shirley Burow, Russell Jay Buster, Robert W. Callis, Nancy L. Callis, Dave Briggs, Renee Chavira, Benjamin Brussell, Elizabeth Brussell, Gregory Bruening, Brenda Bruening, James Calano, Craig Colley, Pam Colley, Don Cooke, Lynn Cooke, Avinder Dhaliwal, Kristy Dhaliwal, Robert Dean, Natalie Dean, Tyler Delaplaine, Shirley Delaplaine, Bryan Devine, Kirsten Devine, Cory F. Dickson, Laura Dickson, Robert R. Dugan, Ernest Eason, Laurie Eason, James Eyster, Katharine Eyster, James Fay, Thomas Finan, Karen Fukuma, Dan Fogelberg, Robyn Fogelberg, Rich Frankenheimer, Demry Frankenheimer, Ted Frazier, Carol Fruth, John Fruth, Richard Gates, Darlene Gates, Jay Gengelbach, David Gerding, Shelly Gerding, Robert Hicks, Suzanne Hicks, Richard Granger, Susan Granger, Douglas Harper, Kelly Harper, Lynn Herklotz, James Herklotz, Vince Hirsch, Laurence Hirshland, Christine Hirshland, William Hoagland, Susan D. Leach, James G. Hohenstein, Jerry Hopf, Charlotte Hopf, J. Mack Hopping, Jeannine E. Hopping, Mike Hupka, Jean Hupka, Yvonne Iden, David Kabal, Cassie Kabal, William Kaewert, Julie Kaewert, Gregory Keene, Jamiee Keene, Edward Klimkowsky, Dolores Klimkowsky, Kenneth Laughery, Scott Leslie, Julie Leslie, Russ Lindemann, Lori Lindemann, Deborah Maduff, Sharon M. Malcolm, Milton Marasch, Nancy Marasch, Michael Mayfield, Madeline Mayfield, Mark McCoy, Lois McCoy, Robert McCraith, Donna McCraith, Paul McCrosson, Herbert McPherson, Shaila McPherson, Quentin McKenna, Eileen McKenna, Steve Merager, John Michalakes, Grace Michalakes, Keith Miller, Janice Miller, Clifford Monette, Patricia Monette, Peter Moore, Rochelle Moore, Joseph Owen, Sharene Owen, Lee Papania, Jerome Papania, Jay Palmer, Shaylin Palmer, David Patton, Kathy Foster-Patton, Dreu Patterson, Mark Ponsor, Susan Ponsor, Dave Rahn, Mark Ringelmann, Nicole Ringelmann, Mark Rothney, Leonard Rozek, Diane Rozek, Ronald Sandgrund, Cheryl Barr, Elaine Scheiman, Robert Searls, Sandra Searls, Rama Gia Speakman, Alan Zalewa, Charles Springer, Deborah Springer, John Stephens, Patricia Stephens, Jim Strouse, Mark Schufman, Jillian Stuart, Rich Summers, Robert Tanner, Hugh Tanner, Edward Theiss, Mary Theiss, Anthony Tome, Jr., Joe Tonahill, Sandra Vanderveer, Will Vanderveer, David Van Deusen, Lisa Haley, Gregory Volan, Wendy Volan, David Walker, Donna Waters, Francis Herb Wiedemann, Josephine Wiedemann, Timothy Wilfong, Anne Wilfong, Gregory

Wilson, Christine Wilson, Robin Abb, George Alexander, Lynn Alexander, Jon Allen Lailberte, April Laliberte, Stan Arnold, Jennifer Arnold, Diane Ashley, Glade Bagnell, Marilyn Bagnell, Douglas Barakat, Mary Barakat, Gary Baughman, Jean Baughman, Bonnie Bitter, Phil Bostley, III, Allen Brunke, Janice Brunke, Jennifer Budacz, Jon Burkepile, Steve Carano, Karen K. Christopher, Daniel Conser, Molly K. Brown, Timothy Cunningham, Christine C. Cunningham, Michael Davison, Michael Driver, Dorrel Edstand, Stephen Nepi, Daniel Foley, Judy Foley, Jesse Foote, Paul Gagner, Victoria Gagner, Gordon Gates, Jan Gates, Damon Ginnow, Nancy Ginnow, Josh Ginsberg, Lauren Ginsberg, Robert Grau, Diane Deyo, Ronald Grush, Lisabeth Hall, Clinton Blackwood, Andrew Halperin, Brenda Burnell, James Hammack, Mary Hammack, James Hayes, Jodie Hayes, Donald Hobbs, Joan Hobbs, Susan Hofer, William Hollander, Margaret A. Hollander, Christopher Hume, Tara Hefty, John Jacob, Edwin Kase, Barbara Ellwanger Kase, Terry Kelly, Diane Kelly, David Kerridge, Barbara Kerridge, Robert Franssen, Deborah Keyek Franssen, Eric J. Kramer, Robin Laurel, Ron Leever, Cindy Leever, Stephen Leichty, Julie Melchior, Karen Lin, Melvin Lyon, Patricia Lyon, Robert Marriner, Cynthia Marriner, Mary Elizabeth McClellan, Kay McCormick, Valery McNally, Gregory Mecca, Kristen Mecca, Tom Miers, Donna Miers, Mark Milliman, Elizabeth Mirowski, Brian Coffey, Robert Murphy, Leann Murphy, Stephanie O'Connor, Dennis Ogden, Danean Ogden, Michael Persinger, Lori Persinger, Pamela Pierce, Edward Podrasky, Rita Podrasky, Steven Preitauer, Marie Preitauer, Allen Price, Janet Price, Kerry Richardson, David Rowan, Shelly Rowan, Peter Schild, Paula Schild, Seward Dean Schooler, Jr., Mark Severance, Pamela Severance, Jim Shapiro, Martha Shapiro, Terrence Smith, Kent Somers, Analisa Somers, Andrew Spiegel, John Steiner, Robert Stoddard, Harriett Stoddard, Dave Strand, Ann Strand, William Stawser, Kristopher Pirtle, James Telischak, Christopher Tennis, Timothy Triggs, Penelope Triggs, Leon Tupy, Judy Tupy, Cliff Watts, Craig Werner, Anita M. Wilks, Bob Worley, Dorothy Worley, Ronald D. Young, and Fannie C. Young,

Plaintiffs-Appellants,

v.

Boulder County Board of County Commissioners,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE DUNN
J. Jones and Lichtenstein, JJ., concur

Announced June 30, 2016

Halpern Meacham, Madeline J. Meacham, Boulder, Colorado, for Plaintiffs-Appellants

Ben Pearlman, County Attorney, David Hughes, Deputy County Attorney, Leslie Wright Lacy, Assistant County Attorney, Boulder, Colorado, for Defendant-Appellee

¶ 1    Unhappy that the roads in their subdivision have fallen into disrepair, property owners in unincorporated Boulder County (collectively, the Owners) filed an action to force the Boulder County Board of County Commissioners (the County) to maintain their subdivision roads.  We conclude the Owners do not have standing to bring their claims against the County.  We therefore affirm the dismissal of their claims.

## I.    Background

¶ 2    The Owners alleged the following facts and conclusions in their complaints.[1]  The County "accepted road dedications from over 100 subdivisions in the unincorporated county over a period of many decades."  The subdivisions dedicated the roads to the County during the subdivision approval process.  Once accepted, the subdivision roads became part of the county road system and, by statute, are assigned to the County for maintenance.

¶ 3    The County maintained the subdivision roads until the mid-1990s.  Since that time, the County has reduced its road funding.  As a result, the Owners claimed that the County has

---

[1] The Owners filed three complaints.  At issue here are the amended and second amended complaints.  The underlying allegations in these two complaints are largely the same.

neglected to maintain the subdivision roads, resulting in "severe deterioration."

¶ 4     In their amended complaint, the Owners sought class certification and asserted claims for breach of contract, declaratory judgment, "mandatory injunction," mandamus, and "breach of contract damages."[2]  They requested a court order requiring the County to restore the subdivision roads to "[g]ood condition, within five years" and to maintain the roads in "[g]ood condition."  The County moved to dismiss the amended complaint under C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5).

¶ 5     The district court granted the motion, ruling that the Owners failed to state a claim for relief.  The court concluded that the pleading did not establish the existence of a valid contract or sufficient certainty as to the essential contractual terms, and because the court held that each of the claims "requires that . . . a contractual relationship exist," it dismissed the amended complaint.

---

[2] Though pleaded as claims for relief, the requested injunction and contract damages are remedies, not substantive claims for relief. *See, e.g., Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist.*, 247 P.3d 567, 574 (Colo. 2011) (damages considered to be a contract remedy); *Rathke v. MacFarlane*, 648 P.2d 648, 653-54 (Colo. 1982) (characterizing injunction as a remedy).

¶ 6    The court, however, granted the Owners leave to amend their complaint to assert "one or more claims" alleging that the County abused its discretion or acted arbitrarily in not maintaining the subdivision roads.

¶ 7    The Owners' second amended complaint asserted claims for "abuse of discretion," mandatory injunctive relief, and damages. The County moved to dismiss this complaint, arguing that the Owners lacked standing. The district court agreed and dismissed the second amended complaint.

¶ 8    The Owners appeal the dismissal of the amended and second amended complaints.

## II.    Standing

¶ 9    Although the district court did not address the Owners' standing as to the amended complaint, standing is a threshold jurisdictional issue that may be raised at any time. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004). Without standing, we cannot consider the merits of the Owners' claims. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7. Thus, we must first determine whether the Owners have standing to assert

3

each of their claims for relief — the contract claim, statutory claims, and "abuse of discretion" claim. We conclude they do not.

### A. Governing Standards

¶ 10 To establish standing, a plaintiff must demonstrate that (1) he suffered an injury in fact and (2) the injury was to a legally protected interest. *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977); *accord Ainscough,* 90 P.3d at 855. If the plaintiff cannot establish both, "no relief can be afforded, and the case should be dismissed for lack of standing." *Wimberly,* 194 Colo. at 168, 570 P.2d at 539.

¶ 11 The first prong maintains the separation of powers doctrine and prevents a court from invading the legislative and executive spheres. *Hickenlooper,* ¶ 9. This prong requires a concrete adverseness that sharpens the presentation of issues before the courts. *City of Greenwood Vill. v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 437 (Colo. 2000).

¶ 12 The second prong requires that the plaintiff demonstrate a "legal interest protecting against the alleged injury." *Ainscough,* 90 P.3d at 856; *see also City of Greenwood Vill.,* 3 P.3d at 437. A legally protected interest "may rest in property, arise out of

4

contract, lie in tort, or be conferred by statute." *Barber v. Ritter*, 196 P.3d 238, 246 (Colo. 2008). Thus, a court should consider whether the plaintiff has asserted "a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Ainscough*, 90 P.3d at 856.

¶ 13 Whether standing exists is a question of law that we review de novo. *Barber*, 196 P.3d at 245.

## B. Contract Claim

### 1. The Alleged Contract

¶ 14 The Owners did not claim that they entered into an express contract with the County in which the County agreed to maintain the subdivision roads. Rather, they alleged that "[b]y accepting the roads in each subdivision, [the] County entered into a contract with the developer of each subdivision[.]" And the Owners contended that "the developer constructed the roads to county standards and dedicated the roads to public use, in exchange for [the] County agreeing to maintain the roads in the future at public expense." In other words, they claimed that an express maintenance contract was created when the County approved the subdivision plan and accepted the roads for the public.

5

## 2. Subdivision Approval

¶ 15    A subdivision developer must submit documentation to the county regarding the development, layout, and infrastructure for a planned subdivision. § 30-28-133(3), C.R.S. 2015. The county evaluates the plan to determine whether the proposed subdivision satisfies the county's regulatory requirements.[3] §§ 30-28-133(5), (6), -133.5, C.R.S. 2015. As part of the approval process, the county may require the developer to construct the subdivision roads to the county's standards. *See* §§ 30-28-110(3)(a), -137, C.R.S. 2015. Once constructed, the developer can request that the county accept the subdivision roads for the public's use. *See* § 30-28-110(3)(a). And the county may accept the proposed roads "by legislative act, or by the public entity's possession, improvement, or use of the land as a public road." *Bd. of Cty. Comm'rs v. Sherrill*, 757 P.2d 1085, 1088 (Colo. App. 1987); *see also* § 30-28-110(3)(b). If accepted, the roads become part of the county

---

[3] Every county has subdivision regulations. § 30-28-133(1), C.R.S. 2015. Boulder County's subdivision regulations are not part of the record and the amended complaint did not allege a violation of any Boulder County subdivision regulations.

road system and are assigned to the county for maintenance. §§ 43-2-111(1), -201, C.R.S. 2015.

### 3. The Owners Lack Standing

¶ 16    Whether the Owners have standing to assert their contract claim depends upon whether they have a legally protected interest. *See Barber*, 196 P.3d at 246.  That is, whether a contract has been created through the statutory subdivision approval process that may be enforced by the Owners.

¶ 17    "When analyzing whether the government contracted by statute, it is presumed that the legislature did not intend to bind itself contractually and that the legislation was not intended to create a contractual right unless there is a clear indication of the legislature's intent to be bound."  *Justus v. State*, 2014 CO 75, ¶ 20; *accord Colorado Springs Fire Fighters Ass'n v. City of Colorado Springs*, 784 P.2d 766, 773 (Colo. 1989).  This presumption is grounded on the unremarkable principle that the function of a legislature is to make laws that establish policy, not contracts.  *E.g., Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 466 (1985).  Statutory enactments, without more, do not "create a contract relationship with those whom the statute

benefits." *Justus*, ¶ 21.  Thus, a party alleging the existence of a contract based upon a statute "must overcome this well-founded presumption."  *Nat'l R.R.*, 470 U.S. at 466; *accord Justus*, ¶ 20.

¶ 18     The Owners did not allege any facts to overcome this presumption.  Nowhere did the amended complaint allege that the legislature intended the subdivision statutes to create a contract between the County and subdivision developers.  And the complaint did not identify — nor can we find — any contract-creating language in the subdivision statutes that suggests a legislative intent to create a contract between subdivision developers and county commissioners for road maintenance.  *See Colorado Springs Fire Fighters Ass'n*, 784 P.2d at 773 (city ordinance "contained no words of contract" to support an intent to create a contract); *cf. U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 18 (1977) (deriving clear intent to contract from the statutory phrase "covenant and agree").

¶ 19     In an attempt to overcome this deficiency, the Owners contend that their contract claim is not just based on the subdivision statutes but is also based on documents they believe exist that will establish a road maintenance contract with the County.  And they ask us to "infer that the County entered into road maintenance

8

agreements in connection with the approval process" and to "assume[] that . . . the record of the subdivision approval [process] would contain the information necessary to establish a contract."

¶ 20    This argument is unavailing for two reasons. First, it is not alleged in the complaint. Second, we are not at liberty to infer the existence of a contract or its terms. It is for the Owners to plead the existence of a legally protected interest — here a contract — and they did not do so. *See generally Denver Parents Ass'n v. Denver Bd. of Educ.*, 10 P.3d 662, 665 (Colo. App. 2000) (stating parents failed to plead the creation of a valid contract against a public school district based on the school district's legislative decision regarding its education system). They therefore do not have standing to sue the County for breach of contract.

### C.    Statutory Claims

¶ 21    The Owners also asserted claims for declaratory relief and mandamus, alleging that the County violated its "statutory duty" to maintain subdivision roads under the county highway statutes.[4]

### 1.    The County Road Statutes

¶ 22    The amended complaint does not identify any particular statute that creates the County's alleged legal duty to maintain the subdivision roads.  Still, on appeal, the Owners point to a statute that provides, as relevant here, that "both primary and secondary [county] roads, shall be assigned to the county for construction and maintenance."  § 43-2-111(1).  They also appear to rely on statutory provisions that (1) establish a fund in each county for construction and maintenance of roads and bridges, § 43-2-202, C.R.S. 2015; and (2) require counties to report construction and maintenance expenditures, § 43-2-120, C.R.S. 2015.  These provisions, they

---

[4] In its order dismissing the Owners' amended complaint, the district court dismissed all of the claims based on the lack of a contract.  However, the parties agree, as do we, that the mandamus and declaratory judgment claims also alleged a "statutory duty" to maintain the subdivision roads.

10

contend, create "the statutory duty to maintain county roads" and, thus, require the County to maintain the subdivision roads.[5]

¶ 23     We therefore must determine whether the Owners have standing to enforce the county road provisions.[6]

### 2.     The Owners Lack Standing

¶ 24     Whether a plaintiff has standing to bring a statutory claim depends on the rights conferred by the statute. *Taxpayers for Pub. Educ. v. Douglas Cty. Sch. Dist.*, 2015 CO 50, ¶ 15.  Because the Owners do not claim an express statutory private right of action, we look to the statutory language to determine whether an implied right exists.  *See id.* at ¶ 17.

¶ 25     A private civil remedy may be implied where (1) the plaintiff is part of the class of persons the statute is intended to benefit; (2) the statute indicates an implicit intent to create a private right of action; and (3) an implied right of action is consistent with the purposes of the statute.  *See id.* at ¶ 15; *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 910 (Colo. 1992).

---

[5] Because the matter is not before us, we express no opinion on whether the statutory provisions impose a legal duty on the County to maintain the subdivision roads or the extent of any such duty.
[6] For ease of reference, we will refer to the identified statutory provisions as the "county road provisions."

¶ 26    Because the parties do not contest whether the Owners are within the class of persons intended to be benefitted by the county road provisions, we will assume the first factor is satisfied.

¶ 27    But the Owners cannot establish the second factor.  Nothing in the county road provisions suggests that the General Assembly intended for private citizens — such as the Owners — to be able to enforce those provisions.  *See Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 923 (Colo. 1997) ("[W]e will not infer a private right of action based on a statutory violation unless we discern a clear legislative intent to create such a cause of action."); *see also Bd. of Cty. Comm'rs v. Moreland,* 764 P.2d 812, 817-18 (Colo. 1988) (explaining that a clear expression of legislative intent must be present to allow a private civil remedy based on a governmental entity's breach of a legislatively imposed obligation).

¶ 28    Instead, the General Assembly conferred express authority on the board of county commissioners to "determine the general policies of the county as to county highway matters." § 43-2-111(1).[7]  It further decreed that the policies of the board of

---

[7] County highway systems include primary and secondary county roads.  § 43-2-108, C.R.S. 2015.

12

county commissioners "shall be carried out and administered by the county road supervisors." *Id.* Road supervisors are appointed by the board of county commissioners and make recommendations "for road repair and for construction of roads" which "shall be subject to the approval of the board of county commissioners." § 43-2-111(1), (5). The General Assembly thus imposed the obligation of developing county road policies — and the oversight of those policies — on the board of county commissioners. In doing so, it entrusted county road issues to the board of county commissioners — not private citizens. *See Taxpayers,* ¶ 20 (finding no private right of action implied where the Public School Finance Act instructed the state board of education to "make reasonable rules and regulations" to enforce the Act's provisions (quoting § 22-54-120(1), C.R.S. 2015)). The county road provisions therefore do not indicate a legislative intent to allow a private right of action.

¶ 29 Nor does the third factor — whether a private right of action is consistent with the purpose of the statute — support a private right of action. The County is entrusted with developing and overseeing county road policies. § 43-2-111. How it allocates funds for that purpose is within its discretion. *See Tihonovich v. Williams,* 196

Colo. 144, 148, 582 P.2d 1051, 1053 (1978) (explaining that budgetary decisions of the board of county commissioners is a discretionary power). At bottom, the Owners disagree with the County's allocation of funds to road maintenance. But it is to be expected that many citizens disagree with how a county allocates its budget. That alone does not create a private judicial remedy.

¶ 30 To conclude otherwise would improperly intrude on the County's budgetary discretion. Worse, allowing a private right of action could subject the County to endless litigation, which would interfere with the County's ability to "determine the general policies of the county as to county highway matters." § 43-2-111(1); *cf. Taxpayers*, ¶ 21 (allowing private parties to sue state agencies "for every perceived violation" of the Public School Finance Act would "paralyze[]" the agencies and "cripple[] their effectiveness"). An implied civil remedy is therefore not consistent with the purposes of the county road provisions.

¶ 31 Because the Owners do not have standing to enforce the county road provisions, we affirm the dismissal of the Owners' mandamus and declaratory judgment claims.

## D. "Abuse of Discretion" Claim

¶ 32      Finally, at the district court's invitation, the Owners asserted a claim for "abuse of discretion."  We are aware of no cognizable cause of action for "abuse of discretion."  The claim, however, appears to request a declaratory judgment that the County abused its discretion in failing to "fulfill its duty" to maintain the subdivision roads and "allocate funds for that purpose." Construing the claim as one for declaratory judgment, we conclude the Owners do not have standing to maintain this claim.

¶ 33      "To have standing to bring a declaratory judgment action, a plaintiff must assert a legal basis on which a claim for relief can be grounded.  The plaintiff must allege an injury in fact to a legally protected or cognizable interest."  *Farmers Ins. Exch. v. Dist. Court*, 862 P.2d 944, 947 (Colo. 1993); *accord GF Gaming Corp. v. Hyatt Gaming Mgmt., Inc.*, 77 P.3d 894, 896 (Colo. App. 2003); *see also Colo. Chiropractic Ass'n v. Heuser*, 177 Colo. 434, 438, 494 P.2d 833, 834 (1972) (dismissing declaratory judgment action because the plaintiff lacked standing to challenge statute absent a showing "that it [wa]s an aggrieved party or that it [wa]s a party whose interest the statute was designed to protect"); *Associated Master*

*Barbers of Am., Local No. 115 v. Journeyman Barbers, Hairdressers, Cosmetologists & Proprietors Int'l Union of Am., Local No. 205*, 132 Colo. 52, 55, 285 P.2d 599, 600-01 (1955) (holding that persons not parties to a contract did not have standing to seek declaratory judgment on contract's validity).

¶ 34    But the Owners have not asserted any "legal basis" on which their claim that the County had a duty to maintain the subdivision roads "can be grounded." *Farmers*, 862 P.2d at 947.  As previously explained, the Owners have neither a contractual nor a statutory claim.  Nor did they plead that the County has a common law duty to maintain the subdivision roads or assert any common law claims for relief.  *See Colo. Manufactured Hous. Ass'n v. Pueblo Cty.*, 857 P.2d 507, 511 (Colo. App. 1993) (explaining that standing is determined "in the context of [the plaintiff's] claims for relief").[8]  The district court therefore correctly dismissed the declaratory judgment claim for lack of standing.

¶ 35    To the extent the "abuse of discretion" claim seeks to challenge the County's budgetary decisions, the Owners fare no better.  They

[8] Although the Owners argue that they have a common law property interest, they do not explain how this interest relates to their claims for relief.

cite no legal authority that would allow them to challenge the County's budgetary decisions. In the absence of some statutory, constitutional, or other legal basis to challenge the County's discretionary budgeting decisions, the Owners lack standing to do so.

¶ 36    *Tihonovich* does not provide otherwise. There, the court allowed one constitutional officer — the sheriff — to maintain a legal action against another constitutional officer — the board of county commissioners — to compel the board to approve the sheriff's budget requests. *Tihonovich*, 196 Colo. at 147, 582 P.2d at 1053. In light of each party's statutory duties, the supreme court concluded that the sheriff had a right to pursue the action. *Id. at* 148, 582 P.2d at 1054. But because the board's approval of budget requests was within its broad discretion, the sheriff could not compel the board to approve his requested budget. *Id.* at 148, 582 P.2d at 1053-54; *see also Beacom v. Bd. of Cty. Comm'rs*, 657 P.2d 440, 446 (Colo. 1983) (allowing district attorney to challenge board of county commissioners' disapproval of certain budget items, but concluding evidence supported board's budgetary allocations).

¶ 37    *Tihonovich* does not hold that members of the general public have standing to challenge a county's budgetary decisions. No doubt members of the public have an interest in the budget allocations of their county. But — in the absence of a recognized legal basis to do so — that does not mean that every citizen has a right to challenge a county's budgetary decisions and its discretionary allocation of finite funds. *Tihonovich* does not say otherwise.

¶ 38    Accordingly, the district court did not err in dismissing the "abuse of discretion" claim.

### III.    Remaining Contentions

¶ 39    Because we conclude that the Owners lack standing to assert their claims, we do not reach the parties' remaining contentions.

### IV.    Conclusion

¶ 40    The judgment is affirmed.

¶ 41    JUDGE J. JONES and JUDGE LICHTENSTEIN concur.

18