24CA0565 Bonicelli v Sylvio J Bonicelli 01-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0565
El Paso County District Court No. 23CV30107
Honorable William B. Bain, Judge

Joanne Bonicelli, in her capacity as Personal Representative of the Estate of
Silvio J. Bonicelli,

Plaintiff-Appellant,

v.

Sylvio J. Bonicelli & Sons, LLC, a Colorado limited liability company, Patrick A.
Bonicelli, and John J. Bonicelli,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

Snell & Wilmer, L.L.P., James Kilroy, Amanda McKinlay, Denver, Colorado, for
Plaintiff-Appellant

Torbet & Tuft, LLC, Hans C. Tuft, Alyssa L. Miller, Colorado Springs, Colorado,
for Defendants-Appellees

¶ 1    In this civil case concerning the interpretation of an operating agreement, plaintiff, Joanne Bonicelli, in her capacity as the personal representative of the estate of Silvio[1] J. Bonicelli (the Estate), appeals the district court's grant of summary judgment in favor of defendants, Sylvio J. Bonicelli & Sons, LLC (SBS, LLC), Patrick A. Bonicelli, and John J. Bonicelli.  We affirm.

## I.    Background

¶ 2    SBS, LLC was formed in 2003.  It is a family business that owns and leases commercial properties in El Paso County.  The founding and only members of the limited liability company (LLC), Patrick Bonicelli, John Bonicelli, and Silvio Bonicelli, executed an operating agreement that they amended in 2007.  As relevant here, the amended operating agreement (AOA) included additional definitions and revised the sections pertaining to member compensation, gifts, and the processes to be followed when an individual member dies or is found incompetent.

---

[1] We refer to the deceased as Silvio but note that the record indicates that the business's name is spelled "Sylvio Bonicelli & Sons, LLC."

¶ 3     On May 18, 2021, Silvio[2] passed away.  Shortly thereafter, the district court appointed Silvio's wife, Joanne, as the Estate's personal representative.  Silvio's last will and testament was admitted to informal probate on August 6, 2021.

¶ 4     From Silvio's death to the present, Patrick and John have continued to operate the business.  They transferred their business accounting to a new firm in July 2021, and on September 1, 2022, they ratified their agreement to continue operating SBS, LLC through a written resolution.

¶ 5     After Silvio's death, the Estate asked to inspect SBS, LLC's books and records, but Patrick and John refused this request.  The Estate then initiated this action against SBS, LLC, Patrick, and John.  The complaint asserted claims for inspection of the company records and an accounting, a declaratory judgment as to the dissolution of the company, appointment of a receiver, breach of the AOA, and breach of the duty of good faith and fair dealing.  SBS, LLC, Patrick, and John filed their answer and counterclaims for declaratory judgment and breach of contract.  They asserted that

---

[2] We refer to the parties by their first names because they share the same last name and mean no disrespect in doing so.

the Estate was not a member of SBS, LLC and that SBS, LLC was not in dissolution.[3]

¶ 6     The Estate filed a verified motion for appointment of a receiver and requested a hearing.  The district court denied that motion and the Estate's motion to reconsider.

¶ 7     Patrick, John, and SBS, LLC filed both a motion for partial summary judgment on the declaratory judgment claims and a motion for judgment on the pleadings.  In a detailed written order, the district court granted Patrick, John, and SBS, LLC's declaratory judgment counterclaim and found that the Estate lacked standing because it was not a member of SBS, LLC.  Specifically, it noted that the Estate claimed the business dissolved because Patrick and John did not formally vote to continue business operations within ninety days of Silvio's death, and that it was seeking to enforce the AOA provision governing dissolution, Section 10.2.  However, the court found that because the Estate was not a member, it lacked standing to enforce AOA Section 12.11, which prohibits anyone who

_____

[3] The court dismissed their breach of contract claim, premised on an assertion that the Estate breached the AOA by asserting it was a member, based on the Estate's admission that the Estate was not a member of SBS, LLC.

is not a member from trying to enforce any of the provisions of the AOA.

¶ 8    Alternatively, the court found that even if the Estate had standing, its claim failed on the merits because no one disputed that Patrick and John continued business operations after Silvio died, and nothing in the AOA required a "formal vote" by the surviving members to do so.

¶ 9    The Estate contends that the district court erroneously found that (1) it lacks standing to seek a declaratory judgment on the company's dissolution; (2) the company continued operating after Silvio's death, despite the absence of a formal vote to continue operations within ninety days of Silvio's death as required by the AOA; (3) it was not entitled to inspect the company records and request an accounting; (4) the appointment of a receiver was not required; and (5) its concerns about mismanagement did not require appointment of a receiver.

¶ 10    We conclude that the district court erred in finding that the Estate lacked standing to bring its declaratory judgment claim because no one disputes that the Estate is an economic interest owner under the AOA.  However, we agree with the court's finding

that no dissolution occurred and, thus, that appointment of a receiver was not required. Moreover, because the Estate is not a member of SBS, LLC, it lacked standing to inspect company records and to request an accounting. Finally, because the Estate is not a member and has no management authority under the AOA, its assertions of mismanagement do not require the appointment of a receiver.

## II. Standing

¶ 11 The district court predicated its standing finding on the fact that the Estate was not a member of SBS, LLC; thus, the court reasoned, the Estate lacked the authority to enforce any of the AOA's provisions. While we agree that the Estate is not a member, we conclude that it is an "Economic Interest Owner" under AOA Section 11.14. As an economic interest owner, entitled to receive net profits and losses, as well as any distribution of the company's assets, we conclude Joanne and the Estate have an "interest" and legal rights under the AOA and, therefore, have standing to seek a declaratory judgment concerning whether the company dissolved ninety days after Silvio's death. *See* C.R.C.P. 57(b); § 13–51–106, C.R.S. 2024.

## A. Relevant AOA Provisions

¶ 12    AOA Section 11.23 defines a "Member" as follows:

> [E]ach Person who is named as an initial Member in the first paragraph of this Operating Agreement[4] and each other Person who is admitted as a Member pursuant to the terms and conditions of this Operating Agreement, provided, however, that unless the context otherwise requires, the term "member" shall not include any such Person from and after the time that Person Dissociates from the Company.

¶ 13    As relevant here, dissociation includes the death of a member and terminates membership, under Section 11.12.

¶ 14    Further, AOA Section 10.2.3 provides:

> If a Member who is an individual dies . . . the Member's executor . . . ("successor") may exercise all of the Member's rights for the purpose of settling the estate or administering the property for the Member, *provided, however,* that, except to the extent required by applicable law, the successor shall not be considered a Member, and shall have no right to vote or to give or withhold consent, agreement or approval with respect to any matter on which a Member might vote or give or withhold consent, agreement or approval.

(Emphasis added.)

---

[4] That paragraph names Patrick A. Bonicelli, Silvio J. Bonicelli, and John J. Bonicelli.

6

¶ 15    As relevant here, AOA Section 11.24 defines "Membership Interest" as "a Member's entire interest in the Company including the Member's Economic Interest, Member Votes and such other rights and privileges that the Member may enjoy by being a Member."

¶ 16    The AOA Section 11.14 defines an "Economic Interest Owner" as "the owner of an Economic Interest *who is not a Member*." (Emphasis added.)  AOA Section 11.13 defines "Economic Interest" as

> a Member's share, if any, of the Company's Net Profits and Losses and distributions of the Company's assets pursuant to this Operating Agreement and the Colorado Act, but "Economic Interest" shall not include any right to participate in the management of the business or affairs of the company or any right to Vote with Members upon any matter upon which a Vote of the Members is taken.

### B.    Standard of Review and Applicable Law

¶ 17    We review issues of standing de novo.  *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004).  To establish standing, a plaintiff must have suffered an "injury in fact" to a "legally protected interest." *Deutsch v. Kalcevic,* 140 P.3d 340, 341 (Colo. App. 2006).

7

¶ 18　　Additionally, we review a district court's interpretation of a contract de novo. *Saxe v. Bd. of Trs. of Metro. State Coll. of Denver*, 179 P.3d 67, 73 (Colo. App. 2007). Under section 13–51–106, any person interested under a written contract or other writings constituting a contract, or any person whose "rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity" arising out of the contract. *See also* C.R.C.P. 57(b).

¶ 19　　Finally, we review a court's declaratory judgment de novo. *Saxe*, 179 P.3d at 72 (citing *Berenergy Corp. v. Zab, Inc.*, 94 P.3d 1232 (Colo. App. 2004)). A declaratory judgment action is a procedural mechanism, not a substantive claim. *State v. Hill*, 2023 CO 31, ¶ 10. Thus, to state a claim for declaratory judgment, a party must assert a substantive legal basis on which a claim for relief can be grounded. *Id.*; *see also Wibby v. Boulder Cnty. Bd. of Cnty. Comm'rs*, 2016 COA 104, ¶¶ 33-34.

## C.　Analysis

¶ 20　　The Estate claims that it has an economic interest in SBS, LLC and that this interest gives it standing, under sections 13-51-101 and -112, C.R.S. 2024., to have a court determine whether the

company dissolved ninety days following Silvio's death under AOA Section 10.2. We agree.

¶ 21    We begin with the Estate's concession that it is not a member of SBS, LLC. Nevertheless, applying the plain language of the AOA, we conclude that the Estate is an economic interest owner, for three reasons. First, there is no dispute that Silvio was a founding member with an economic interest in the business.

¶ 22    Second, there is no dispute that AOA Section 10.2.3 gives a member's executor the authority to exercise a member's rights for the purpose of settling the member's estate, subject to limited exceptions. Indeed, an executor must settle and distribute the decedent's estate as expeditiously and efficiently as possible, which includes collecting and valuing assets. *See In re Estate of Treviño*, 2020 COA 125, ¶¶ 24-26. Importantly, the exceptions listed in Section 10.2.3 do not include the rights associated with a member's economic interest.

¶ 23    Third, while an economic interest owner is not a member, it is still entitled to receive the member's share of net profits and losses and any distributions of company assets, under the AOA.

¶ 24    Therefore, we conclude that (1) the Estate has an economic interest in SBS, LLC and is therefore an economic interest owner, under the AOA; (2) as an economic interest owner, Joanne and the Estate have an "interest" under the AOA for purposes of C.R.C.P. 57(b) and the declaratory judgment statute; and (3) as executor, Joanne had standing to have determined the legal question whether the company dissolved ninety days after Silvio died (entitling the economic interest owners to a distribution of company assets) as part of the Estate's settlement.  Accordingly, we find that the court erred in determining that the Estate did not have standing.

### III.    Dissolution of SBS, LLC

¶ 25    The Estate contends that the district court erred by finding that SBS, LLC did not dissolve, as a matter of law, ninety days after Silvio's death.  We discern no error in the court's finding and affirm this portion of the judgment.

### A.    Additional Facts

¶ 26    AOA Article X concerns dissociation, dissolution, and termination.  As relevant here, Section 10.2 provides:

> 10.2.1 The Company shall be dissolved upon the occurrence of either of the following events:

10

10.2.1.1 the unanimous written agreement of all Members that it shall be dissolved:

or

10.2.1.2 the Dissociation of a Member, unless the business of the Company is continued by the vote of a Majority in Interest of the Nondissociating Members given within ninety days after the Dissociation.

¶ 27    Additionally, AOA Section 11.38 provides that "Vote" includes "consent, approval and agreement, as the context may permit." Finally, AOA Section 4.10 states that "Members may take action without a meeting if all of the Members consent to such action in writing."

¶ 28    Following Silvio's death, Patrick and John agreed to continue operating the business, though they did not immediately reduce this agreement to writing.  As part of their decision, in July 2021 (less than ninety days after Silvio's death), they retained a new firm to handle the business's taxes and accounting.

¶ 29    During a business transaction in September 2022, a title company requested a copy of the AOA and asked for a written resolution confirming that the company continued its operations following Silvio's death.  Patrick and John provided the AOA and

11

signed a resolution formalizing their intent to continue operations following Silvio's death.

¶ 30    The district court agreed with the Estate that Patrick and John did not recall that the AOA even existed until more than ninety days after Silvio's death. Nevertheless, based on Patrick's and John's affidavits and their actions after Silvio's death, it found that they agreed to continue operating the business within ninety days, thereby satisfying the "vote" requirement through mutual consent. The court rejected the Estate's assertion that such a vote had to be in writing and occur at a formal meeting.

B.    Standard of Review and Applicable Law

¶ 31    We review a district court's grant of summary judgment de novo. *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004). In doing so, we view the record in the light most favorable to the nonmoving party. *Greenwood Tr. Co. v. Conley*, 938 P.2d 1141, 1143 (Colo. 1997). Summary judgment is appropriate "when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist, and the moving party is entitled to judgment as a matter of law." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004).

12

¶ 32    Colorado courts interpret an operating agreement by examining it in its entirety. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). In doing so, we apply the words as written and may not add language to the agreement that does not exist. *See Golden Run Ests., LLC v. Town of Erie*, 2016 COA 145, ¶ 21 ("Courts must enforce contracts as written."). An "'[o]perating agreement' means any agreement of all of the members as to the affairs of a limited liability company and the conduct of its business." § 7–80–102(11)(a), C.R.S. 2024. An LLC's operating agreement acts as a contract among its members, who agree that the exercise of their membership and management rights and duties will be bound by the terms set forth therein. 51 Am. Jur. 2d *Limited Liability Companies* § 4, Westlaw (database updated Oct. 2024); *see also Condo v. Conners*, 271 P.3d 524, 528 (Colo. App. 2010); *In re Seneca Invs. LLC*, 970 A.2d 259, 261 (Del. Ch. 2008) ("An LLC is primarily a creature of contract, and the parties have wide contractual freedom to structure the company as they see fit.").

¶ 33    In interpreting a contract, our goal is to determine and effectuate the reasonable expectations of the parties. *Thompson v.*

*Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004).  A member's ownership interest in an LLC is normally treated as the personal property of the member and may be assigned or transferred.  § 7–80–702(1), C.R.S. 2024.  This general rule may be abrogated by the express terms of an LLC's operating agreement.  § 7–80–108(1), C.R.S. 2024 (establishing that an operating agreement may contain any provision, subject to certain exceptions — none of which are present here); *see also In re Albright*, 291 B.R. 538, 540 n.6 (Bankr. D. Colo. 2003).  When the terms of an operating agreement do not conflict with existing law, "maximum effect [is given] to the principle of freedom of contract and to the enforceability of [the terms]."  § 7–80–108(4).

## C.    Analysis

¶ 34    Applying the plain language of the AOA, we conclude that it does not require a formal vote at an in-person meeting for the remaining members to continue operations following another member's death.  Indeed, all that AOA Section 10.2.1.2 states is that the "business of the Company is continued by the vote of a Majority in Interest of the Nondissociating Members given within ninety days after the Dissociation."  And AOA Section 11.38 states

that vote "includes consent, approval and agreement, as the context may permit." Nothing in either section requires that the vote be in writing or conducted in person, and we are not free to add such language to the AOA. *See Golden Run Ests., LLC*, ¶ 21.

¶ 35 We further conclude that Patrick and John evidenced their consent to continue business operations (which can constitute a "vote" under the AOA) by continuing to manage and lease SBS, LLC's commercial properties and by engaging a new firm to handle their taxes and accounting, following Silvio's death. And we note that Joanne confirmed, in her deposition testimony, that she had no reason to believe Patrick and John intended to dissolve the business. Moreover, neither Patrick nor John filed a notice of dissolution with the Colorado Secretary of State, as required by AOA Section 10.3.

¶ 36 Finally, we are not convinced that Patrick and John's execution of a written resolution in 2022, confirming their intent to remain in business after Silvio's death, requires a different result, for two reasons. First, the Estate has not identified, nor have we found, any provision in the AOA that requires a written resolution to continue operations after a member's death. Again, we may not

add this requirement to the AOA. *See id.* Second, the resolution was specifically requested by a title company during normal business operations and served to confirm that Patrick and John had voted, through mutual consent, to continue operating SBS, LLC within ninety days of Silvio's death.

¶ 37 Accordingly, we affirm the court's judgment finding that no dissolution occurred.

## IV. Remaining Contentions

¶ 38 The Estate contends that the court erred in denying it an inspection of the company documents, an accounting, and appointment of a receiver to investigate alleged mismanagement. Because we have concluded that no dissolution of SBS, LLC occurred, we accept the Estate's concession that we need not address these contentions.

## V. Disposition

¶ 39 The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.